Electronically Filed
Supreme Court
SCWC-18-0000600
29-DEC-2020
09:51 AM
Dkt. 47 OP

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---oOo---

_____

STATE OF HAWAIʻI, Respondent/Plaintiff-Appellee,

vs.

RAMONCITO D. ABION, Petitioner/Defendant-Appellant.

_____

SCWC-18-0000600

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-18-0000600; CASE NO. 2PC161000043)

DECEMBER 29, 2020

RECKTENWALD, C.J., NAKAYAMA, McKENNA, AND WILSON, JJ., AND
CIRCUIT JUDGE CASTAGNETTI, IN PLACE OF POLLACK, J., RECUSED

OPINION OF THE COURT BY McKENNA, J.

## I.   Introduction

We address whether a defendant whose substance use results

in permanent psychosis is prohibited by the self-induced

intoxication exception from presenting evidence relevant to the lack of penal responsibility defense.

The issue arises from the jury conviction of Ramoncito Abion ("Abion") on one count of assault in the second degree in violation of Hawai'i Revised Statutes ("HRS") § 707-711 (2014) ("assault second")[1] in the Circuit Court of the Second Circuit ("circuit court"). On January 11, 2016, Temehane Visaya ("Visaya"), an employee at the Waiehu Shell gas station, was cleaning an oil spill when she saw Abion lying on the sidewalk and talking to himself. Visaya asked Abion to leave. She then walked to an alley next to the store, and Abion hit her on the back of the head with a hammer. Maui Police Department ("MPD") officer Charles Taua ("Officer Taua") responded. Officer Taua stopped Abion about a quarter of a mile away and explained that a man matching his description had been seen striking Visaya with a hammer. Abion said that he had done it and that the hammer was in his backpack. Officer Taua noted that Abion

---

[1]     HRS § 707-711 provides, in relevant part:

>        (1)   A person commits the offense of assault in the second
>            degree if:
>                (a)   The person intentionally, knowingly, or
>                recklessly causes substantial bodily injury to
>                another;
>                (b)   The person recklessly causes serious bodily
>                injury to another;
>                . . .
>                (d)   The person intentionally or knowingly causes
>                bodily injury to another with a dangerous
>                instrument[.]

2

displayed "bizarre behavior," that he heard voices and saw visions, and was "unusually suspicious." Officer Taua did not indicate that Abion appeared intoxicated.

After Abion was arrested and charged with assault second, a panel of three medical examiners deemed Abion fit for trial. One of the examiners, Dr. Martin Blinder ("Dr. Blinder"), however, opined that Abion suffered from amphetamine psychosis and may be entitled to a lack of penal responsibility defense.

Before trial, the State filed a motion for a finding of inadmissibility of the HRS § 704-400 (2014)[2] defense ("motion for inadmissibility"), seeking to preclude Dr. Blinder from testifying at trial. The State argued that self-induced intoxication precluded a lack of penal responsibility defense and that Dr. Blinder's testimony was therefore irrelevant. The circuit court precluded Dr. Blinder from testifying on the grounds that State v. Young, 93 Hawai'i 224, 999 P.2d 230 (2000), had determined a drug-induced mental illness was self-induced

---

[2]  HRS § 704-400 provides:

> (1) A person is not responsible, under this Code, for conduct if at the time of the conduct as a result of physical or mental disease, disorder, or defect the person lacks substantial capacity either to appreciate the wrongfulness of the person's conduct or to conform the person's conduct to the requirements of law.

> (2) As used in this chapter, the terms "physical or mental disease, disorder, or defect" do not include an abnormality manifested only by repeated penal or otherwise anti-social conduct.

intoxication prohibited as a defense by HRS § 702-230(1) (Supp. 2015).[3]

Abion was convicted of assault second and the Intermediate Court of Appeals ("ICA") affirmed.  Abion's application for writ of certiorari ("Application") raises the following question:

> Did the Intermediate Court of Appeals gravely err by tolerating the trial court's exclusion of Mr. Abion's only witness, violating his Due Process right to present

---

[3]     HRS § 702-230 provides in relevant part:

> (1) Self-induced intoxication is prohibited as a defense to any offense, except as specifically provided in this section.
> (2) Evidence of the nonself-induced or pathological intoxication of the defendant shall be admissible to prove or negative . . . the state of mind sufficient to establish an element of the offense. Evidence of self-induced intoxication of the defendant is admissible . . . prove state of mind sufficient to establish an element of an offense. Evidence of self-induced intoxication of the defendant is not admissible to negative the state of mind sufficient to establish an element of the offense.
> (3) Intoxication does not, in itself, constitute a physical or mental disease, disorder, or defect within the meaning of section 704-400.
> (4) Intoxication that is:
>     (a) Not self-induced; or
>     (b) Pathological,
> is a defense if by reason of the intoxication the defendant at the time of the defendant's conduct lacks substantial capacity either to appreciate its wrongfulness or to conform the defendant's conduct to the requirements of law.
> (5) In this section:
> "Intoxication" means a disturbance of mental or physical capacities resulting from the introduction of substances into the body.
> "Pathological intoxication" means intoxication grossly excessive in degree, given the amount of the intoxicant, to which the defendant does not know the defendant is susceptible and which results from a physical abnormality of the defendant.
> "Self-induced intoxication" means intoxication caused by substances which the defendant knowingly introduces into the defendant's body, the tendency of which to cause intoxication the defendant knows or ought to know, unless the defendant introduces them pursuant to medical advice or under such circumstances as would afford a defense to a charge of a penal offense.

4

evidence in support of his defense, and undermining the jury's exclusive task to resolve ultimate issues of fact?

A defendant in a criminal case has the right to be accorded "a meaningful opportunity to present a complete defense." State v. Matafeo, 71 Haw. 183, 185, 787 P.2d 671, 672 (1990) (citation omitted). "Thus, 'a defendant has the constitutional right to present any and all competent evidence in [their] defense.'" State v. Acker, 133 Hawai'i 253, 301, 327 P.3d 931, 979 (2014) (citation omitted). "[W]here the accused asserts a defense sanctioned by law to justify or to excuse the criminal conduct charged, and there is some credible evidence to support it, the issue is one of fact that must be submitted to the jury," and it is reversible error for the court to "reject evidence which, if admitted, would present an essential factual issue for the trier of fact." State v. Horn, 58 Haw. 252, 255, 566 P.2d 1378, 1380-81 (1977).

Abion essentially asserts there was "competent evidence" presenting an "essential factual issue" regarding "a defense sanctioned by law . . . to excuse [his] criminal conduct." 58 Haw. at 255, 566 P.2d at 1380. The circuit court and ICA ruled, however, that under the circumstances of this case, there was no such defense based on HRS § 702-230(1), which provides that "[s]elf-induced intoxication is prohibited as a defense to any

5

offense[.]"  They so ruled based on their interpretation of this court's decision in Young, 93 Hawai'i 224, 999 P.2d 230.

As explained below, however, Young did not consider or decide whether HRS § 702-230(1) prohibits a defendant from presenting evidence of a permanent mental illness caused by substance use as relevant to a HRS § 704-400 lack of penal responsibility defense.  We now hold that, based on the language and legislative history of HRS § 702-230, the self-induced intoxication exception of HRS § 702-230(1) applies only when a defendant is under the temporary influence of voluntarily ingested substances at the time of an act.

Hence, Dr. Blinder would have presented "competent evidence" on an "essential factual issue" regarding "a defense sanctioned by law . . . to excuse [Abion's] criminal conduct." Thus, the circuit court "reject[ed] evidence which, if admitted, would [have] present[ed] an essential factual issue for the trier of fact" and violated Abion's due process right to present a complete defense by precluding Dr. Blinder from testifying at trial.  Horn, 58 Haw. at 255, 566 P.2d at 1381.

We therefore vacate the ICA's April 14, 2020 judgment on appeal, which affirmed the circuit court's June 13, 2018 judgment of conviction and sentence and July 26, 2018 stipulation and order to amend judgment of conviction, and we

6

remand this matter to the circuit court for further proceedings consistent with this opinion.

## II. Background

### A. Circuit court proceedings

On January 13, 2016, Abion was charged with assault second in violation of HRS § 707-711(1)(a) and/or (b) and/or (d).[4]

#### 1. Abion's motion for HRS § 704-404 examination

On March 8, 2016, Abion filed a motion for a HRS § 704-404[5] examination to determine whether he was fit to proceed and whether he was suffering from a physical or mental disease, defect, or disorder at the time of the alleged offense. Three medical examiners concluded that Abion was fit to stand trial. Two of the examiners determined that Abion's cognitive and volitional capacities were "not substantially impaired because of a major mental illness."

One examiner, Dr. Blinder, diagnosed Abion with "[m]ethamphetamine psychosis," and noted that "protracted use of methamphetamines causes permanent brain damage at a cellular level, its effects apparent long after an individual has been free of the drug." Dr. Blinder's report also noted Abion "was not using methamphetamines on the day of his offense or several

---

[4] See supra note 1 for relevant language of HRS § 707-711.

[5] See supra note 2 for the language of HRS § 704-400.

days preceding," but that "[a]bsent his paranoid psychosis Mr. Abion would never have attacked a woman with whom he had no quarrel, and absent past use of methamphetamines he would never have had an amphetamine psychosis[.]"  Dr. Blinder opined that Abion may be entitled to a mental defense because his "commerce with reality was hugely impaired at the time of his assaultive conduct[.]"

### 2. State's motion for inadmissibility of HRS § 704-400 defense

On September 22, 2017, the State filed a motion for inadmissibility of HRS § 704-400 defense, asking the circuit court to hold that Abion "may not elicit testimony from Dr. Blinder regarding a '704' defense."  The State expected Dr. Blinder to testify that Abion's conduct was the result of methamphetamine psychosis, and it argued that "[i]ntoxication does not, in itself, constitute a physical or mental disease, disorder, or defect," citing HRS § 702-230.  Therefore, the State contended that the circuit court should find Dr. Blinder's testimony irrelevant pursuant to Hawai'i Rules of Evidence ("HRE") Rule 104 (1984).[6]

---

[6]    HRE Rule 104 provides, in relevant part:

> (a) Questions of admissibility generally. Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subsection (b). In making its

(continued . . .)

8

On October 6, 2017, an evidentiary hearing was held on the State's motion for inadmissibility.[7]  The State called Dr. Blinder as a witness, who testified as follows.

Dr. Blinder had diagnosed Abion with methamphetamine psychosis.  Methamphetamine is capable of "caus[ing] structural changes in the brain" "powerful enough to render somebody periodically psychotic."  "[T]hese changes in the brain are permanent long after [a person has] given up methamphetamines," and the person may "continue to have paranoid thoughts . . . [and] be susceptible to auditory hallucinations."  However, not everyone experiences these effects from long-term methamphetamine use.  Dr. Blinder explained that methamphetamine use may also cause people with a genetic predisposition for schizophrenia to develop symptoms that would not otherwise have manifested:

> A.    So -- so let's say you have a genetic endowment of some sort of the genes that contribute to the outbreak of schizophrenia, you don't have nine or ten, you just have three or four, you can probably sail through life and never exhibit any psychotic symptoms.  You're okay.  But if you use methamphetamines, you don't need the whole nine genetic endowments to develop the psychoses.  It will eliminate this genetic predisposition that, absent the methamphetamines, you never would have known about.

----

determination the court is not bound by the rules of evidence except those with respect to privileges.

(b) Relevancy conditioned on fact. When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition.

[7]    The Honorable Richard T. Bissen presided.

However, "people with an absolutely clean genetic makeup can [also] develop methamphetamine psychoses[.]"

Dr. Blinder determined that "to a reasonable degree of medical probability, [Abion] would not have had [] psychos[i]s absent his use of methamphetamine." Abion also told him that he had "an auntie who spent a lot of time in a mental hospital," which meant "in [Abion's] genetic pool there's something floating in there that he'd be better off if he didn't carry it." In Dr. Blinder's opinion, the incident between Abion and Visaya probably would not have happened absent Abion's long-term methamphetamine use.

On cross-examination, Dr. Blinder affirmed his opinion that Abion may carry a genetic predisposition for psychosis that was activated by prolonged methamphetamine use. As far as Dr. Blinder could tell, Abion was not under the influence of methamphetamine during the incident with Visaya, but "rather was suffering from its permanent or long-term effects."

Before redirect, the circuit court asked Dr. Blinder how the aunt who had spent time in a mental hospital was related to Abion, because "In Hawaii everybody calls everybody auntie." Dr. Blinder testified that he did not determine how Abion's aunt was related to him, and "if it's not a blood relative, then it's

totally irrelevant." However, whether or not Abion's aunt was a blood relative did not change Dr. Blinder's opinion:

> THE WITNESS: It doesn't change it, it just pulls out from under my conclusions one of its bases, so it makes me less confident that this man is carrying some sort of low grade genetic endowment that predisposes him for psychoses. It shifts all of the responsibility onto the methamphetamine, since I have indicated earlier, there are some unlucky people with no genetic predisposition, they use these drugs, and that's enough to send them into a mental hospital.

On November 11, 2017, the circuit court issued its findings of fact, conclusions of law, and order granting the State's motion for inadmissibility ("order granting motion for inadmissibility"). The circuit court's order included the following conclusions of law ("COLs"):

> 1. Preliminary questions concerning the admissibility of evidence shall be determined by the court. H.R.E. 104(a).
> 2. Intoxication does not, in itself, constitute a physical or mental disease, disorder, or defect within the meaning of HRS Section 704-400. H.R.S. 702-230(3).
> 3. Intoxication is not a defense to any offense, unless specifically provided for in H.R.S. § 702-230.
> 4. A drug-induced or exacerbated mental illness does not constitute a defense. State v. Young, 93 Hawai'i 224, 232, 999 P.2d 230, 238 (2000).
> 5. Dr. Blinder's testimony that Defendant was suffering from a psychosis caused by long-standing drug abuse does not constitute a defense.
> 6. Further, Defendant cannot now benefit from long-term drug abuse by asserting that the voluntary damage he did to his body now constitutes a defense.
> 7. Therefore, Dr. Blinder's testimony is not relevant pursuant to H.R.E. 104, and shall not be admissible at trial.

The order stated that the "State's Motion for Finding of Inadmissibility of HRS 704-400 Defense is granted."

11

3.    **Abion's notice of intent and the State's motion in limine**

On February 28, 2018, Abion filed a notice of intent to rely on an HRS chapter 704 defense and call Dr. Blinder to testify ("notice of intent").  On March 1, 2018, the State filed its motion in limine no. 2 to preclude Abion from introducing evidence inconsistent with the circuit court's order granting motion for inadmissibility.

On March 2, 2018, a hearing was held on the State's motion in limine no. 2.  Defense counsel acknowledged that the court "already made a decision" regarding Dr. Blinder's testimony, but explained that the notice of intent was filed "to make the record clear that this is a defense that I think should be available."

The circuit court granted the State's motion in limine and denied Abion's notice of intent.  The circuit court stated:

> [THE COURT:] What I'm precluding is Dr. Blinder from coming in and testifying, because we already had a full-blown hearing on this back in November, that it doesn't offer any -- any scientific explanation to -- to amount to a defense. It was, as far as all the parties agreed, or the facts came out to the examiners, this was voluntary intoxication on the part of the defendant, and that is not a defense . . . .
> So this case will not include Dr. Blinder, at least not as to testifying to Mr. Abion being under a self-induced methamphetamine condition . . . .
> So I don't feel there's any prejudice to the defense in this case because they're not precluded from presenting their defense, they're just precluded from calling Dr. Blinder [from] coming in and calling it a mental defense, because that, I find, it's not.
> So the Court -- I suppose I'm granting the State's motion in limine number two, I'm denying the Defense notice [of] intent to call Dr. Blinder to testify, and we'll leave it at that.

12

Thus, the circuit court precluded the defendant from calling Dr. Blinder as a witness.

### 4. Jury trial

Abion's jury trial commenced on March 19, 2018.[8]  Only the State called witnesses; Abion did not call any witnesses and did not testify.

#### a. Witness testimony

##### i. Alana Kahai

Alana Kahai ("Kahai") testified as follows.

On January 11, 2016, Kahai and her fiancé, Haumanu Tuuafu ("Tuuafu"), went to the Waiehu Shell gas station.  They parked the car at the front of the store, and Tuuafu went into the store while Kahai waited in the car.  Kahai saw Visaya cleaning an oil spill by the gas pumps.  Tuuafu came out of the store, and as they were leaving, Kahai saw Visaya talking to someone near the corner of the gas station.  Kahai could not see who she was talking to.  As Visaya started to go into the alley next to the store, a man struck her from behind with a hammer, and she fell backward.  The man then put his backpack on his chest, put his right hand with the hammer into the backpack, and started to

---

[8]     The transcript of proceedings initially indicate that trial was held on October 19 and October 20, 2018.  However, the remainder of the transcripts and the parties indicate the trial occurred on March 19 and March 20, 2018.

13

walk toward their car.  At trial, Kahai identified the man as Abion.

Kahai jumped out of the car, went into the store to get Visaya's coworker, and called 911.  While calling 911, Kahai observed the direction Abion left and told the police where he was going.  Abion seemed calm as he walked away.

### ii.  Haumanu Tuuafu

Tuuafu testified as follows.

On January 11, 2016, Tuuafu and Kahai went to the gas station, and Tuuafu went into the store while Kahai waited in the car.  As he pulled out of the parking stall, Tuuafu saw a woman employee.  The woman went into the alley next to the store, and Tuuafu saw a man reach into his bag, grab a hammer, and hit the woman on the head from behind.  At trial, Tuuafu identified that man as Abion.  After Abion hit the woman, he put the hammer back in the bag and walked toward the road.

On cross-examination, Tuuafu testified that after striking the employee, Abion walked "casually walked" away and did not run.  Tuuafu gave a statement to the police and said that he had seen Abion "at the parking lot from time to time," and that he had seen Abion sleep at the gas station.

### iii. Temehane Visaya

Visaya testified as follows.

On January 11, 2016, Visaya was an employee at the Waiehu Shell gas station. On that day, as she cleaned an oil spill by the gas pumps, Visaya saw someone on the sidewalk at the side of the building lying on his back and talking to himself. At trial, Visaya identified the person she saw as Abion. Visaya had seen Abion at the gas station before "[t]wo to three times a day."

Visaya swept cat litter onto the oil spill about three or four feet away from where Abion lay. She then asked Abion to leave, but he did not respond. Visaya walked toward the alley next to the store to wash the broom and dustpan. After entering the alley, the next thing Visaya remembered was her legs buckling and that she could not breathe. Visaya remembered waking up on the ground in the alley, seeing police, and being put into an ambulance. Visaya could not remember what happened at the hospital.

### iv. Officer Charles Taua

Officer Taua testified as follows.

On January 11, 2016, Officer Taua was dispatched to the Waiehu Shell gas station. Officer Taua was given a description of the alleged offender, and he saw someone matching that description about a quarter of a mile away from the gas station. At trial, Officer Taua identified the person he saw as Abion.

Officer Taua stopped Abion and explained that someone had reported that a man matching his description had struck Visaya with a hammer.  Abion said that he had done it and that the hammer was in his backpack.  Officer Taua read Abion his Miranda rights, and Abion gave a statement saying he hit "the lady" with a hammer.  When asked at trial if he recalled if Abion said Visaya threw dust on him, Officer Taua remembered that Abion had said something to the effect of "she did it first," but he was "confused on what exactly he was referring to."  Abion was "cooperative," but also "animated."  He did not appear confused or incoherent.  Officer Taua asked for Abion's consent to search his backpack, which Abion granted.  There was a hammer inside the backpack.

On cross-examination, Officer Taua testified that when he approached Abion, Abion was not running and did not attempt to hide.  Abion did not hide that he had a hammer and did not hesitate in providing a statement.  Abion told Officer Taua that the woman at the gas station had swept dust into his face and that she had hit him first.  Abion did not appear to have any guilt or regrets.  When asked if Abion appeared to be intoxicated or experiencing withdrawal from drugs or alcohol, Officer Taua said he was not sure, but Abion was "really animated" and may have acted "passive" "at times."

Officer Taua prepared an inmate suicide screening report for Abion at around 1:30 p.m. on January 11, 2016. Officer Taua's report noted that Abion displayed "bizarre behavior," that he heard voices and saw visions, and was "unusually suspicious." The report did not indicate that Abion appeared intoxicated or was experiencing drug or alcohol withdrawal.

### v. Dr. Beth Jarrett

Dr. Beth Jarrett ("Dr. Jarrett") testified as follows.

Dr. Jarrett was a general surgeon at the Maui Memorial Medical Center who treated Visaya on January 11, 2016. Visaya had a laceration on her head, and Dr. Jarrett determined that she had "a couple fractures" and "a hematoma to the skin and soft tissues of the fracture." Dr. Jarrett opined that a strike to the head with a hammer could cause a substantial risk of death "especially if the brain is injured," could cause serious permanent disfigurement, and could cause protractive loss or impairment of the brain.

### b. Jury instructions and closing arguments

Despite pretrial rulings precluding Dr. Blinder's testimony and disallowing "a mental defense," the circuit court instructed the jury not only on self-defense, but also on the "affirmative

17

defense of physical or mental disease, disorder, or defect, excluding criminal responsibility."[9]

In closing, defense counsel argued that Abion was unable to conform his actions to societal norms, as indicated by testimony that he was talking and laughing to himself despite Officer Taua's report indicating that he was not intoxicated.

### c.  Jury verdict and sentencing

On March 20, 2018, the jury found Abion guilty of assault second.

On June 13, 2018, the circuit court entered its judgment of conviction and sentence.  Abion was sentenced to five years imprisonment.[10]  Abion appealed the June 13, 2018 judgment.

## B.  ICA proceedings

### 1.  Abion's arguments

Abion raised a single point of error: "the circuit court erred in preventing [him] from using Dr. Blinder to explain to the jury [he] was suffering from a physical or mental disease, disorder, or defect."

---

[9]     As discussed, evidence had been received regarding Abion actions and statements.  We do not address whether the circuit court's ruling allowing the defense, but not Dr. Blinder's testimony, is consistent with the circuit court's mistaken but apparent ruling that there was no factual issue that Abion's psychosis was caused by the self-induced intoxication that precluded a HRS § 704-400 defense based on HRS § 702-230(1) as construed by Young.

[10]    Abion was also assessed a Crime Victim Compensation Fee of $105 and an Internet Crimes Against Children Fee of $100.

Abion argued the circuit court violated his constitutional right to present a complete defense, citing State v. Tetu, 139 Hawaiʻi 207, 225, 386 P.3d 844, 862 (2016). Abion contended he had a right to present Dr. Blinder's testimony to the jury in support of his insanity defense, and that while the prosecution could attempt to rebut his defense by arguing his psychosis was caused by intoxication, the circuit court could not preclude Dr. Blinder's testimony.

Abion asserted that in his case, Dr. Blinder's testimony that he had a genetic predisposition for psychosis showed that he suffered from a preexisting condition aggravated by drug use, which was "defensible under HRS § 704-400." Abion argued the circuit court's reliance on Young was misplaced because a drug-exacerbated mental illness was not at issue in Young. Abion also argued the HRS § 702-230(3) exception "arises only when the [mental] disturbance is directly caused by 'intoxication . . . in itself.'"

In a footnote, Abion asserted that "[a]ny reliance on Young is perilous at this point" because in State v. Eager, 140 Hawaiʻi 167, 177, 398 P.3d 756, 766 (2017), this court held that "juries must reconcile evidence of a physical or mental disease, disorder, or defect with evidence of intoxication to determine if 'the mental disturbance would excuse the defendant's criminal conduct absent the influence of the intoxicant.'" Abion

19

contended that Eager had "implicitly overruled Young[.]" Therefore, Abion argued the circuit court's judgment must be vacated and his case remanded for new trial.

### 2. The State's arguments

The State argued that even though the circuit court did not allow Dr. Blinder to testify, Abion had not been precluded from presenting other evidence in support of his HRS § 704-400 defense. The State likened this case to Young and maintained that the 1986 amendment to HRS § 702-230 "specifically precluded self-induced intoxication as a defense, subject to certain exceptions" for the purpose of "hold[ing] persons acting under self-induced intoxication ultimately responsible for their actions."

The State distinguished this case from Eager, where the defendant had not taken his prescribed medication and had tested positive for marijuana, and "the trial court did not distinguish the effects of medication withdrawal from the effects of marijuana consumption." In comparison, Dr. Blinder testified that Abion had a genetic predisposition for psychosis that would not have manifested absent drug use, not that Abion had a "pre-existing mental disease, disorder, or defect[.]" Therefore, there was no question of fact raised as to whether Abion's mental disturbance would excuse his conduct absent drug use.

### 3. Memorandum opinion

On February 28, 2020, the ICA issued its memorandum opinion affirming Abion's conviction. State v. Abion, CAAP-18-0000600 (App. Feb. 28, 2020) (mem.).

The ICA found no merit in Abion's argument that his genetic predisposition for psychosis was a "preexisting condition" and a defense under HRS § 704-400. Abion, mem. op. at 12. The ICA determined that there was no support for Dr. Blinder's conclusion that Abion had a genetic predisposition for psychosis because he had not determined whether Abion's aunt, who had spent time in a mental hospital, was a blood relative. Id. Even if Abion had a genetic predisposition for psychosis, Dr. Blinder testified that Abion's psychosis would not have manifested absent long-term methamphetamine use. Id. The ICA ruled Dr. Blinder's testimony established that Abion suffered from "drug-induced psychosis," which was not a defense under Young. Abion, mem. op. at 12-13.

The ICA held the circuit court erred to the extent its COL 4 cited Young for the proposition that a drug-exacerbated mental illness does not constitute a defense because that issue was not addressed in Young. Id. The ICA, however, held that this error was harmless because Dr. Blinder's testimony did not establish that Abion suffered from a drug-exacerbated mental illness. Id.

The ICA then addressed Abion's argument that Eager "implicitly overruled Young." Abion, mem. op. at 14. The ICA determined that Eager was distinguishable from this case and Young because "Eager presented a case where there was no evidence or finding in the bench trial that substance abuse caused the defendant's mental disease, disorder, or defect." Abion, mem. op. at 15. By comparison, "Dr. Blinder's testimony provided that Abion's psychosis was caused by his methamphetamine use[.]" Id. Similarly, in Young, "the trial court concluded that the defendant's mental illness was caused by the use of intoxicants." Id. Therefore, the ICA held that Eager did not overrule Young. Id.

On April 14, 2020, the ICA filed its judgment on appeal affirming the circuit court's June 13, 2018 judgment of conviction and sentence and July 26, 2018 stipulation and order to amended judgment of conviction and sentence.

## C. Application for certiorari

Abion maintains the circuit court's exclusion of his only witness violated his due process right to present evidence in support of his defense and undermined the jury's exclusive task to resolve ultimate issues of fact. Citing Horn, 58 Haw. at 255, 566 P.2d at 1380, Abion asserts that when "the accused asserts a defense sanctioned by law to justify or excuse the criminal conduct charged, and there is some credible evidence to

support it, the issue is one of fact that must be submitted to the jury," and that it is reversible error for the court to "reject evidence which, if admitted, would present an essential factual issue for the trier of fact."

Abion asserts that this court did not expand the self-induced intoxication exception to include "preexisting mental illnesses aggravated by drug abuse" in Young. Furthermore, he contends that the jury "determines if the defendant's physical or mental condition was the result of intoxication," and that by preventing his only witness from testifying at trial, the ICA "usurped the jury's constitutional role to determine ultimate issues of fact."

Abion also contends the self-induced intoxication exception "should be limited to temporary conditions that arise while a person is under the influence of an intoxicant," and that the legislative history of HRS § 702-230(3) cited in Young "suggests an exception only for those who commit offenses while under the influence of an intoxicant."

### III. Standard of Review

#### A. Statutory interpretation

The interpretation of a statute is a question of law that this court reviews de novo. State v. Arceo, 84 Hawai'i 1, 10, 928 P.2d 843, 852 (1996). When construing a statute, our foremost obligation is to ascertain and give effect to the

23

intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose. State v. Ruggiero, 114 Hawai'i 227, 231, 160 P.3d 703, 707 (2007) (citation omitted).

**B.    Right to present a complete defense**

"Central to the protections of due process is the right to be accorded 'a meaningful opportunity to present a complete defense.'" Matafeo, 71 Haw. at 185, 787 P.2d at 672 (quoting California v. Trombetta, 467 U.S. 479, 485 (1984)). "Thus, 'a defendant has the constitutional right to present any and all competent evidence in [their] defense.'" State v. Acker, 133 Hawai'i 253, 301, 327 P.3d 931, 979 (2014) (quoting State v. Kassebeer, 118 Hawai'i 493, 514, 193 P.3d 409, 430 (2008)). "Nevertheless, a defendant's right to present relevant evidence is not without limitation and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." Kassebeer, 118 Hawai'i at 514, 193 P.3d at 430 (citations omitted).

24

## IV.  Discussion

**A.  <u>Young</u> has been misconstrued and the self-induced intoxication exception of HRS § 702-230(1) applies only when a defendant is temporarily under the influence of a voluntarily ingested substance**

We first provide context to our discussion.  As we recently explained in <u>State v. Glenn</u>, 148 Hawai'i 112, 468 P.3d 126 (2020):

> In order to commit a crime, a defendant must be capable of intending to act wrongfully. The bedrock principle that a crime requires a wrongful intent "is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil." <u>Morissette v. United States</u>, 342 U.S. 246, 250, 72 S.Ct. 240, 96 L.Ed. 288 (1952). For this reason, if a mental illness or impairment results in a defendant lacking substantial capacity to appreciate the wrongfulness of their conduct or to conform their conduct to the law, then the defendant cannot be held criminally responsible. Hawai'i Revised Statutes (HRS) § 704-400 (2019).[11]

148 Hawai'i at 115, 468 P.3d at 129 (footnote omitted).[12]

As we noted in <u>Young</u>, however, in 1986, the legislature

---

[11]  See <u>supra</u> note 1.

[12]  In <u>Glenn</u>, we noted and prospectively held as follows:

> Lack of penal responsibility is not merely a statutory affirmative defense; it reflects a precept that is fundamental to due process under the Hawai'i Constitution: "A defendant who, due to mental illness, lacks sufficient mental capacity to be held morally responsible for his actions cannot be found guilty of a crime." <u>Kahler v. Kansas</u>, --- U.S. ----, 140 S. Ct. 1021, 1039, 206 L.Ed.2d 312 (2020) (Breyer, J., dissenting). Accordingly, we prospectively hold that once the court receives notice. . . that a defendant's penal responsibility is an issue in the case, the circuit court must advise a defendant of the penal-responsibility defense and obtain a knowing waiver of the defense. <u>Cf.</u> <u>Tachibana v. State</u>, 79 Hawai'i 226, 236, 900 P.2d 1293, 1303 (1995).

(continued . . .)

added subsection (1) to HRS § 702-230 to prohibit "self-induced intoxication" as a defense to penal responsibility, except in limited circumstances.  93 Hawai'i at 232, 999 P.2d at 238. Thus, HRS § 702-230 now provides as follows, with relevant portions underlined:

> (1) <u>Self-induced intoxication is prohibited as a defense to any offense, except as specifically provided in this section.</u>
> (2) Evidence of the nonself-induced or pathological intoxication of the defendant shall be admissible to prove or negative . . . the state of mind sufficient to establish an element of the offense. Evidence of self-induced intoxication of the defendant is admissible to . . . prove state of mind sufficient to establish an element of an offense. <u>Evidence of self-induced intoxication of the defendant is not admissible to negative the state of mind sufficient to establish an element of the offense</u>.
> (3) Intoxication does not, in itself, constitute a physical or mental disease, disorder, or defect within the meaning of section 704-400.
> (4) <u>Intoxication that is:</u>
>     (a) <u>Not self-induced</u>; or
>     (b) Pathological,
> <u>is a defense if by reason of the intoxication the defendant at the time of the defendant's conduct lacks substantial capacity either to appreciate its wrongfulness or to conform the defendant's conduct to the requirements of law.</u>
> (5) <u>In this section:</u>
> <u>"Intoxication" means a disturbance of mental or physical capacities resulting from the introduction of substances into the body.</u>
> "Pathological intoxication" means intoxication grossly excessive in degree, given the amount of the intoxicant, to which the defendant does not know the defendant is susceptible and which results from a physical abnormality of the defendant.
> <u>"Self-induced intoxication" means intoxication caused by substances which the defendant knowingly introduces into the defendant's body, the tendency of which to cause intoxication the defendant knows or ought to know</u>, unless the defendant introduces them pursuant to medical advice or under such circumstances as would afford a defense to a charge of a penal offense.

---

148 Hawai'i at 116, 468 P.3d at 130.  <u>Glenn</u>'s prospective holding does not apply to Abion's case.  In any event, the jury in Abion's case was given a lack of penal responsibility instruction.

According to the State, Young held that permanent mental illness attributable to substance use precludes an HRS § 704-400 defense due to the self-induced intoxication exception of HRS § 702-230.  Abion contends that such an "expansive reading of the self-induced intoxication exception in Young should be abandoned" and the "intoxication exception to the insanity defense should be limited to temporary conditions that arise while a person is under the influence of an intoxicant."  The circuit court and the ICA agreed with the State.

The circuit court and the ICA misinterpreted Young.  In Young, we did reject the assertion that "a drug-induced or exacerbated mental illness, in and of itself, constitutes a criminal defense as a matter of law[,]" and we stated:

> In 1986, the legislature added subsection (1) to HRS § 702-230, specifically prohibiting self-induced intoxication as a defense except in limited circumstances. 1986 Haw. Sess. L. Act 325, § 2 at 687-88. The conference committee stated that it "believes that when a person chooses to drink, that person should remain ultimately responsible for [their] actions." Conf. Comm. Rep. No. 36, in 1986 House Journal, at 928. HRS § 702-230(3) provides that intoxication alone cannot negate penal responsibility under HRS § 704-400. To adopt the rule suggested by Young would be contrary to this statutory scheme. If an intoxicated person cannot escape ultimate responsibility for his actions, neither should a defendant who chronically engages in substance abuse. Only in the instance when the intoxication causes the person to lack the ability to form the requisite state of mind is intoxication a defense. The same is also true of someone with a drug-induced mental illness.

93 Hawai'i at 232, 999 P.2d at 238.

Young must, however, be construed in light of its circumstances and factual findings.  In Young, the defendant was

27

convicted of second-degree murder after repeatedly striking a Burger King employee in the head with a hammer after another employee had declined his request for some money.  93 Hawai'i at 227, 230, 999 P.2d at 233, 236.  Unlike this case, all three mental health doctors appointed to examine Young actually testified at the bench trial.  Although the trial court found that psychosis caused by drugs can last for months after drug use has stopped, it also specifically found that Young drank twelve beers and smoked up to three marijuana joints daily, and also used other illegal drugs in the weeks leading up to the offense.  93 Hawai'i at 230, 999 P.2d at 236.[13]

Also, Young argued that he suffered brain damage <u>during a 1997 fight</u> and that this brain damage constituted a <u>physical</u> (not mental) disease entitling him to a § 704-400(1) defense.  <u>Young</u>, 93 Hawai'i at 232, 999 P.2d at 238.  The trial court found that Young did not suffer brain damage and his neurological functioning was not impaired as a result of the 1997 fight.  <u>Id.</u>  We also stated, "[t]he issue of a preexisting mental illness that is aggravated by drug abuse is not presented in this case."  99 Hawaii at 232, 999 P.2d at 238.  In addition, <u>Young</u> also did not address whether a defendant suffering from a permanent mental impairment caused by substance abuse but not under the

---

[13]    The trial court also found that Young was not schizophrenic.  93 Hawai'i at 230, 999 P.2d at 236.

temporary influence of a voluntarily ingested substance at the time of an offense is subject to the self-induced intoxication exception of HRS § 702-230.

Thus, in Young, whether a permanent mental illness caused by substance use was precluded by the self-induced intoxication exception was not at issue. Rather, Young applied the self-induced intoxication exception to an offense committed by a defendant who, at the time of the offense, was temporarily under the influence of voluntarily ingested substances. Young therefore involved a temporary impairment resulting from voluntary intoxication. Young did not address whether a defendant suffering from a permanent mental impairment caused by substance abuse is subject to the self-induced intoxication exception of HRS § 702-230.[14]

Also, it is the language of HRS § 702-230 that controls. The statute indicates that the self-induced intoxication exception applies only when a defendant is under the temporary influence of voluntarily ingested substances at the time of an act. HRS § 702-230(5) defines "intoxication" as "a disturbance of mental or physical capacities resulting from the introduction of substances into the body." (Emphasis added.) It further defines "self-induced intoxication" as "intoxication caused by

---

[14] Thus, contrary to Abion's contention, Eager, 140 Hawaiʻi 167, 398 P.3d 756, did not implicitly overrule Young.

29

substances which the defendant knowingly introduces into the defendant's body, the tendency of which to cause intoxication the defendant knows or ought to know."[15]  Also, the references to "the amount of the substance" in the definition of "pathological intoxication," as "intoxication grossly excessive in degree, given the amount of the intoxicant, to which the defendant does not know the defendant is susceptible and which results from a physical abnormality of the defendant[]" further evinces that "intoxication" and "self-induced intoxication" mean a defendant's temporary intoxicated state after voluntary ingestion.

Thus, as we stated in Eager, "the purpose of HRS § 702-230 'is to prevent defendants who willingly become intoxicated and then commit crimes from using self-induced intoxication as a defense.'"  140 Hawai'i at 175, 398 P.3d at 764 (citing State v. Souza, 72 Haw. 246, 248, 813 P.2d 1384, 1386 (1991)).  The self-induced intoxication exception only applies when a defendant is under the temporary influence of voluntarily ingested substances at the time of an act.

---

[15]    If "self-induced intoxication" includes permanent mental impairment caused by ingestion of substances, then whether Abion knew or ought to have known that his methamphetamine use could cause permanent psychosis would also become an issue.  But, as explained, "self-induced intoxication" does not include permanent mental impairment caused by ingestion of substances.

If HRS § 702-230(1) is ambiguous, its legislative history establishes that the self-induced intoxication exception was intended to apply only when a defendant, at the time of an offense, is temporarily under the influence of voluntarily ingested substances. Through enacting the self-induced intoxication exception, the legislature intended to make it clear that "when a person chooses to drink, that person should remain ultimately responsible for [their] actions." Young, 93 Hawai'i at 232, 999 P.2d at 238 (quoting Conf. Comm. Rep. No. 36, in 1986 House Journal, at 928). The legislative history also explicitly states that "<u>criminal acts committed while a person is voluntarily intoxicated</u> should not be excused by the application of a defense which would negate the offender's state of mind." Conf. Com. Rep. No. 30-86, in 1986 Senate Journal, at 736 (emphasis added).

Hence, we now hold that the self-induced intoxication exception of HRS § 702-230(1) only applies to acts committed while a person is temporarily under the influence of voluntarily ingested substances.

Our holding is consistent with the approach of other states. A majority of jurisdictions hold that a lack of penal responsibility defense may be available to defendants suffering from permanent or "settled insanity" as a result of voluntary intoxication. See 21 Am. Jur. 2d. Criminal Law § 48 (2020)

31

(describing common law "settled insanity" exception to general prohibition against voluntary intoxication as a defense); R. W. Gascoyne, Annotation, Modern Status of the Rules as to Voluntary Intoxication as Defense to Criminal Charge, 8 A.L.R.3d 1238 (originally published 1966).  Among those jurisdictions, some have also clearly held, as we do today, that while permanent mental impairment resulting from voluntary intoxication may be a defense, temporary impairment resulting from voluntary intoxication is not.  See Morgan v. Commonwealth, 464 S.E.2d 899, 903 (Va. Ct. App. 2007) (holding that voluntary intoxication is not a defense unless it produces "permanent insanity"); McNeil v. United States, 933 A.2d 354, 369 (App. D.C. 2007).

Thus, the circuit court and the ICA erred in precluding Dr. Blinder's testimony based on the self-induced intoxication exception of HRS § 702-230.

## B. Abion's constitutional right to present a complete defense was violated

Under the Hawai'i Constitution, "[c]entral to the protections of due process is the right to be accorded 'a meaningful opportunity to present a complete defense.'" Matafeo, 71 Haw. at 185, 787 P.2d at 672 (quoting Trombetta, 467 U.S. at 485).  "Thus, 'a defendant has the constitutional right to present any and all competent evidence in [their] defense.'"

32

Acker, 133 Hawai'i at 301, 327 P.3d at 979 (quoting Kassebeer, 118 Hawai'i at 514, 193 P.3d at 430).  "[W]here the accused asserts a defense sanctioned by law to justify or to excuse the criminal conduct charged, and there is some credible evidence to support it, the issue is one of fact that must be submitted to the jury."  Horn, 58 Haw. at 255, 566 P.2d at 1380.

The right to present a complete defense is also a federal constitutional right.  As stated by the Tenth Circuit Court of Appeals in Ellis v. Mullin, 326 F.3d 1122, 1128 (10th Cir. 2002) (holding that exclusion of pretrial psychiatric report diagnosing defendant as chronic schizophrenic violated petitioner's due process right to present evidence critical to his defense):

> "[S]tate evidentiary determinations ordinarily do not present federal constitutional issues . . . . However, the Supreme Court, in, e.g., Chambers v. Mississippi, 410 U.S. 284, 302, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), and Green v. Georgia, 442 U.S. 95, 97, 99 S.Ct. 2150, 60 L.Ed.2d 738 (1979) (capital sentencing proceeding), has provided an exception, under some circumstances, if a state court applies the State's evidentiary rules unfairly to prevent a defendant from presenting evidence that is critical to his defense."  Romano, 239 F.3d at 1166.  "[T]o determine whether a defendant was unconstitutionally denied his or her right to present relevant evidence, we must balance the importance of the evidence to the defense against the interests the state has in excluding the evidence."  Richmond v. Embry, 122 F.3d 866, 872 (10th Cir. 1997).  Further:
>
>> [T]o establish a violation of . . . due process, a defendant must show a denial of fundamental fairness . . . . It is the materiality of the excluded evidence to the presentation of the defense that determines whether a petitioner has been deprived of a fundamentally fair trial. Evidence is material if its suppression might have affected the

33

> outcome. In other words, material evidence is that which is exculpatory-evidence that if admitted would create reasonable doubt that did not exist without the evidence.
>
> Richmond, 122 F.3d at 872 (citations and internal quotation marks omitted).  See also Romano, 239 F.3d at 1168 ("[W]e need ask no more than whether the trial court's application of this state evidentiary rule excluded critical exculpatory evidence.").

This court has also recently recognized that defendants have a right under the Hawaiʻi Constitution to assert a lack of penal responsibility defense.  Glenn, 148 Hawaiʻi at 116, 468 P.3d at 130:

> Lack of penal responsibility is not merely a statutory affirmative defense; it reflects a precept that is fundamental to due process under the Hawaiʻi Constitution: "A defendant who, due to mental illness, lacks sufficient mental capacity to be held morally responsible for his actions cannot be found guilty of a crime."  Kahler v. Kansas, --- U.S. ----, 140 S. Ct. 1021, 1039, 206 L.Ed.2d 312 (2020) (Breyer, J., dissenting).

Abion asserts his right to present a complete defense was violated when the circuit court precluded any testimony from Dr. Blinder.  We agree.

Whether Abion acted during a period of temporary self-induced intoxication, is, at minimum, disputed.  Officer Taua's report and testimony did not indicate that Abion was intoxicated at the time of the offense.  Dr. Blinder opined that Abion's psychosis was activated by methamphetamine use, and that he was suffering from the "permanent of long-term effects" of methamphetamine at the time of the offense.  Dr. Blinder's psychiatric report noted, however, that Abion "was not using

methamphetamines on the day of his offense or several days preceding," and at the pre-trial hearing he testified that Abion was not under the influence at the time of the offense "as far as [he] could tell" based on the reports available to him and his interview with Abion.

Also, in his psychiatric evaluation of Abion, Dr. Blinder opined that Abion may be entitled to a mental defense because his "commerce with reality was hugely impaired at the time of his assaultive conduct[.]" At the pre-trial hearing, Dr. Blinder also testified that "to a reasonable degree of medical probability, [Abion] would not have had [] psychoses absent his use of methamphetamine," and that he may have had a genetic predisposition for psychosis that caused him to develop symptoms that would not otherwise have manifested. In Dr. Blinder's opinion, Abion was not under the influence of methamphetamines at the time of the offense, but "rather was suffering from its permanent or long-term effects."

Although the circuit court instructed the jury on the HRS § 704-400 defense, it precluded Dr. Blinder from testifying at trial on the grounds that his opinion was irrelevant under Young, which it construed as holding that a drug-induced mental

illness is not a defense pursuant to HRS § 702-230.[16]  However, as we have held, the self-induced intoxication exception of HRS § 702-230(1) only applies to acts committed while a person is temporarily under the influence of voluntarily ingested substances.

Hence, Dr. Blinder would have presented "competent evidence" on an "essential factual issue" regarding "a defense sanctioned by law . . . to excuse [Abion's] criminal conduct." Horn, 58 Haw. at 255, 566 P.2d at 1380.  Thus, the circuit court "reject[ed] evidence which, if admitted, would [have] present[ed] an essential factual issue for the trier of fact" and violated Abion's due process right to present a complete defense by precluding Dr. Blinder from testifying at trial.  Id.

Dr. Blinder's testimony would have aided the jury in determining whether Abion suffered from a physical or mental disease, disorder, or defect that caused him to lack the substantial capacity to appreciate the wrongfulness of his conduct or conform his conduct to the requirements of law at the time of the offense under HRS § 704-400.  His testimony would have also aided the jury in determining whether Abion was under the influence at the time of the offense.  Therefore, by

---

[16]    As discussed in the previous section, Young did not determine whether a lack of penal responsibility defense is available to a defendant suffering from a permanent drug-induced mental illness and who was not under the influence of drugs or alcohol at the time of the offense.

precluding Dr. Blinder's testimony at trial, the circuit court violated Abion's due process right to present a complete defense by precluding Dr. Blinder from testifying at trial.

## V.    Conclusion

We therefore vacate the ICA's April 14, 2020 judgment on appeal, which affirmed the circuit court's June 13, 2018 judgment of conviction and sentence and July 26, 2018 stipulation and order to amend judgment of conviction, and remand this case to the circuit court for further proceedings consistent with this opinion.

Benjamin E. Lowenthal,            /s/ Mark E. Recktenwald
for Abion
                                  /s/ Paula A. Nakayama

Gerald K. Enriques,               /s/ Sabrina S. McKenna
for the State
                                  /s/ Michael D. Wilson

                                  /s/ Jeannette H. Castagnetti