249 P.3d 1141

STATE of Hawai'i, Respondent/Plaintiff–Appellee,

v.

Barry SILVER, Petitioner/Defendant–Appellant.

No. SCWC–29060.

Supreme Court of Hawai'i.

Feb. 2, 2011.

**2**

Peter Van Name Esser and Myles S. Breiner, for petitioner/defendant-appellant.

Richard K. Minatoya, Deputy Prosecuting Attorney, County of Maui, for respondent/plaintiff-appellee.

RECKTENWALD, C.J., NAKAYAMA, ACOBA, DUFFY, JJ., and Circuit Judge DEL ROSARIO, Assigned by Reason of Vacancy.

1. The Honorable Joseph E. Cardoza presided.

Opinion of the Court by DUFFY, J.

Petitioner/Defendant–Appellant Barry Silver (Silver) filed a timely application for a writ of certiorari (Application), urging this court to review the Intermediate Court of Appeals' (ICA) July 15, 2010 judgment on appeal in support of its June 30, 2010 memorandum opinion, which affirmed the Circuit Court of the Second Circuit's (circuit court) March 7, 2008 judgment finding Silver guilty of four counts of sexual assault in the third degree.[1] We accepted the Application on November 23, 2010.

Silver's Application presents the following questions:

A. Did the Maui prosecutor mislead the grand jury and withhold clearly exculpatory evidence which would have negated four out of five counts in the indictment?

B. Did the trial court exclude critical evidence of a prior inconsistent statement made by the complaining witness to law enforcement officials in a sex assault case?

C. Did the trial court permit testimony by psychologist Alexander Bivens that was tantamount to an opinion that the complaining witness was telling the truth?

D. Did the State commit prosecutorial misconduct by arguing sexual predator profiles and grooming techniques without any support in the evidence?

E. Does touching the buttocks of a child during horseplay or a massage constitute third degree sexual assault, and if so, does the statute provide fair notice of that fact?

F. Did the trial court fail to conduct a timely hearing regarding claims of a sleeping juror by waiting until after the alternates were released and the verdict?

We hold that the ICA gravely erred by concluding that sufficient evidence existed to support Silver's conviction on Count 1. Accordingly, we reverse the judgment of conviction on Count 1 for insufficiency of the evidence. We leave the remainder of the ICA's opinion undisturbed.

## I. BACKGROUND

This case arises from incidents on July 16–17, 2004, in which Silver allegedly touched the penis and buttocks of Minor, who was eleven years old at the time, while Silver and Minor were staying at the condominium home of Vickie Josefsberg (Vickie) and Alan Josefsberg (Alan) (collectively, the Josefsbergs) in Ka'anapali, Maui. On June 6, 2005, the grand jury indicted Silver on five counts of sexual assault in the third degree in violation of Hawai'i Revised Statutes (HRS) section 707–732(1)(b).[2] Counts 1, 3, and 5 alleged that Silver touched Minor's buttocks on three separate occasions, and Counts 2 and 4 alleged that Silver touched Minor's penis on two separate occasions.

### A. Trial Proceedings

#### 1. The State's case

Silver's jury trial began on January 8, 2007. Respondent/Plaintiff–Appellee State of Hawai'i (State or prosecution) called as witnesses, inter alia, Minor and Minor's father.

##### a. Minor's testimony

Minor testified that he visited Maui with his father in the summer of 2004, when he was eleven years old. While in Maui, they stayed at the Josefsbergs' condominium; Minor's father was a former student of Alan's. At that time, Minor met Silver who was also staying with the Josefsbergs.

Minor testified that he slept on the living room couch's foldout bed along with his father. At the beginning of the trip, Silver slept in another room on a cot, but eventually moved to the same bed as Minor and his father because he said the cot was bad for his back. Minor slept between his father and Silver.

Minor testified that while he was sleeping on the couch on the night in question, Silver woke him up by rubbing him and whispering to him. Silver asked Minor to scoot closer, and Minor complied by scooting a few inches closer. Silver told Minor, "shh, don't wake anybody up." According to Minor, Silver rubbed his arm and then began rubbing his back. At this point, Minor scooted away and fell back asleep for a short time.

Minor testified that he was again woken up by Silver, who was rubbing him on his arm and lower back. According to Minor, as Silver was rubbing down Minor's back, he "brushed over [Minor's] butt really slow." Minor then scooted closer to his father and fell back asleep for a couple of minutes.

Minor testified that he woke up again because Silver was rubbing his arm. At this point, Minor was lying on his back and Silver "brushed over [Minor's] crotch and [his] penis[.]" Minor testified that because Silver brushed over his penis and buttocks slowly, it indicated to Minor that Silver's actions were intentional. Minor testified that, in total, Silver brushed over his penis once and his buttocks twice. Thereafter, Minor scooted very close to his father and fell asleep.

Minor also testified that, "a day or two before" the alleged touching on the foldout couch occurred, Silver had also touched him inappropriately in the swimming pool. While in the pool, Silver and Minor's father would throw Minor back and forth between them. According to Minor, Silver would, "hold under my butt to like hoist me up and throw me, but I don't remember like him grabbing me or anything." When asked what part of his body Silver touched, Minor responded, "[k]ind of like my crotch to throw me or under my butt to throw me."

##### b. Minor's father's testimony

Minor's father testified that he saw "a lot of physical contact in the pool[ ]" between Silver and Minor. He elaborated that he saw, "wrestling, kind of tossing around, splashing water back and forth, kind of a lot of, you know, horseplay[.]" According to Minor's father, Silver would grab Minor and

2. At the time of the alleged offense, as it does now, HRS section 707–732(1)(b) stated:
 A person commits the offense of sexual assault in the third degree if ... [t]he person knowingly subjects to sexual contact another person who is less than fourteen years old or causes such a person to have sexual contact with the person[.]

 HRS § 707–732(1)(b) (Supp.2004).

throw him up in the air. Minor's father testified that he would not have known if Silver had his hands underneath Minor's buttocks. Further, he did not see any sexual contact between Silver and Minor in the pool.

### 2. Silver's motions for judgment of acquittal

Upon the close of the State's case, Silver moved for judgment of acquittal on each count pursuant to Rule 29 of the Hawai'i Rules of Penal Procedure (HRPP).[3] The circuit court denied the motion, finding that, when viewed in the light most favorable to the prosecution, evidence existed to support the elements of each count.

The defense then rested its case without calling any witnesses. At this point, Silver renewed his HRPP Rule 29 motion for judgment of acquittal. The court initially denied the motion as to all counts, however, after reviewing the testimony of Minor, the court granted Silver's motion as to Count 2, which alleged sexual contact with Minor's penis during the nighttime massage.

The jury found Silver guilty of Count 1 and Counts 3–5.

### B. *Post-trial Proceedings*

On January 29, 2007, Silver filed a motion for a new trial. On March 27, 2008, the circuit court filed its "Findings of Fact, Conclusions of Law, Order Denying Defendant's Motion for New Trial[.]"

On March 7, 2008, the circuit court filed its judgment of conviction and sentence. Silver was sentenced to five years imprisonment on each of the four counts, with the terms to be served concurrently.

### C. *Appeal to the ICA*

Silver filed his opening brief with the ICA on August 27, 2008, arguing essentially the same points of error that he raises in the present Application. The ICA rejected all of Silver's arguments and affirmed the judgment of the circuit court. *See generally* Mem. Op. at 9–30.

Silver filed his Application on October 13, 2010. The State did not file a response.

## II. *STANDARDS OF REVIEW*

### A. *Statutory Interpretation*

 "Questions of statutory interpretation are questions of law reviewed *de novo.*" *Gump v. Wal–Mart Stores, Inc.*, 93 Hawai'i 417, 420, 5 P.3d 407, 410 (2000).

> In our review of questions of statutory interpretation, this court follows certain well-established principles, as follows:
>
> First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists. And fifth, in construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning.

*Awakuni v. Awana*, 115 Hawai'i 126, 133, 165 P.3d 1027, 1034 (2007) (citation omitted).

*Hawaii Gov't Employees Ass'n, AFSCME Local 152, AFL–CIO v. Lingle*, 124 Hawai'i 197, 202, 239 P.3d 1, 6 (2010) (hereinafter HGEA). In construing an ambiguous statute, this court may consider "[t]he reason

---

3. HRPP Rule 29(a) states, in relevant part, that [t]he court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses alleged in the charge after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses. If a defendant's motion for judgment of acquittal at the close of the evidence offered by the prosecution is not granted, the defendant may offer evidence without having reserved the right. HRPP Rule 29(a) (1977).

and spirit of the law, and the cause which induced the legislature to enact it ... to discover its true meaning." HRS § 1–15(2) (2009). "Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called upon in aid to explain what is doubtful in another." HRS § 1–16 (2009).

B. *Sufficiency of the Evidence*

 We have long held that evidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction; the same standard applies whether the case was before a judge or a jury. The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact.

. . .

"Substantial evidence" as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable [a person] of reasonable caution to support a conclusion. *State v. Batson*, 73 Haw. 236, 248–49, 831 P.2d 924, 931 (1992) (citations omitted). *State v. Matavale*, 115 Hawai'i 149, 157–58, 166 P.3d 322, 330–31 (2007) (brackets in original).

III. *DISCUSSION*

A. *The ICA Gravely Erred In Finding That Sufficient Evidence Supported Silver's Conviction On Count 1 Of The Indictment.*

Silver was convicted of four counts of sexual assault in the third degree in violation of HRS section 707–732(1)(b). Count 1 was based on Silver's alleged touching of Minor's buttocks in the pool, and Counts 3–5 were based on Silver's alleged touching of Minor's penis, once, and buttocks, twice, during a subsequent nighttime massage. In his Application, Silver appears to argue that there was insufficient evidence of sexual assault in the third degree on each count in which Silver was accused of touching Minor's but-tocks (Counts 1, 3, 5). Alternatively, he contends that if HRS section 707–732(1)(b) applies to the conduct alleged in this case, then the statute fails to give notice of the type of conduct that is impermissible.

At the time of the alleged offense, as it does now, HRS section 707–732(1)(b) stated:

A person commits the offense of sexual assault in the third degree if ... [t]he person knowingly subjects to sexual contact another person who is less than fourteen years old or causes such a person to have sexual contact with the person[.]

HRS § 707–732(1)(b) (Supp.2004). "Sexual contact" is defined as

any touching, other than acts of "sexual penetration", of the sexual or other intimate parts of a person not married to the actor, or of the sexual or other intimate parts of the actor by the person, whether directly or through the clothing or other material intended to cover the sexual or other intimate parts.

HRS § 707–700 (Supp.2004). Neither "sexual parts", nor "intimate parts" are defined in HRS chapter 707.

In *State v. Kalani*, 108 Hawai'i 279, 118 P.3d 1222 (2005), the defendant was convicted of two counts of sexual assault in the third degree in violation of HRS section 707–732(1)(b) for twice kissing a nine-year old girl and, on both occasions, inserting his tongue in her mouth. *Id.* at 280–81, 118 P.3d at 1223–24. The defendant argued that the trial court erred in concluding that, in the context of his case, the mouth and tongue were "intimate parts" within the meaning of HRS section 707–700. *Id.* at 281, 118 P.3d at 1224.

In interpreting HRS section 707–700, we held that "[b]ased on the plain language of [the statute], 'sexual parts' clearly refers to the sex organs." *Id.* at 284, 118 P.3d at 1227. Further, "[b]oth the plain language of the statute and the application of the maxim of ejusdem generis indicate that 'intimate parts,' as used in HRS § 707–700, refers to only those parts of the body typically associated with sexual relations." *Id.* at 284–85, 118 P.3d at 1227–28.

In the present case, Silver does not dispute that the penis is a "sexual part" as that phrase is used in HRS section 707–700. *Id.* at 284, 118 P.3d at 1227; *see also* HRS § 707–700 (Supp.2004). Nor does Silver appear to challenge that sufficient evidence exists in the record to support a conviction on Count 4, in which Silver was charged with touching Minor's penis during the nighttime massage. *See* HRAP Rule 40.1(d)(4) (2010) ("The application for a writ of certiorari . . . shall contain . . . [a] brief argument with supporting authorities."). Silver does, however, argue that "nothing in the sex assault statutes suggests" that the Legislature considered the buttocks to be associated with sexual relations and, thus, to be "intimate parts" within the meaning of HRS section 707–700.

In *Kalani*, we determined that the plain language of section 707–700 did not indicate whether the mouth and tongue were "intimate parts" for purposes of the statute. *Kalani*, 108 Hawai'i at 285, 118 P.3d at 1228. Turning to the legislative history of section 707–700, we stated as follows:

> As originally enacted, HRS § 707–700 (Special Pamphlet 1975) provided that " '[s]exual contact' means any touching of the sexual or other intimate parts of a person not married to the actor, done with the intent of gratifying the sexual desire of either party[.]" *See also* 1972 Haw. Sess. L. Act 9, § 1 at 85. In December 1984, the Committee on Penal Code Revision and Reform of the Judicial Council of the Hawai'i Supreme Court [hereinafter, Committee on Penal Code Revision] recommended, *inter alia*, that HRS § 707–700 be amended to limit the definition of "sexu-

al contact" to offensive contact with specifically enumerated parts of the body. The Committee on Penal Code Revision proposed amending HRS § 707–700 to read, " '[s]exual contact' means any offensive touching of the penis, testicles, mons veneris, groin, inner thigh, buttock, or female breast of another person's body." *See* Comm. on Penal Code Revision & Reform of the Judicial Council of the Hawai'i Supreme Court, A Comprehensive Review & Reformation of the Hawai'i Penal Code (Submitted to the Thirteenth Legislature) 100 (1984).

> The Committee on Penal Code Revision's proposed amendment to HRS § 707–700 was submitted to and considered by the legislature. *See* H.B. 100, 13th Leg., Reg. Sess. (Haw. 1986); *see also* Sen. Stand. Comm. Rep. No. 569–86, in 1986 Senate Journal at 1037 (indicating that the senate committee considered, *inter alia*, amending "Section 707–700, Hawai'i Revised Statutes, by incorporating the [C]ommittee on [P]enal [C]ode [R]evision's definition of sexual contact"). Ultimately, however, the legislature rejected the proposed amendment. Instead, the legislature expanded the definition of "sexual contact" by removing the requirement that the proscribed conduct be done "with the intent of gratifying the sexual desire of either party." *See* 1986 Haw. Sess. L. Act 314 § 48 at 615.

*Id.* (brackets in original, footnote omitted).

We also read "sexual contact" in section 707–700 in pari materia with the definition of "deviate sexual intercourse"[4] and "sexual penetration"[5] in the same section, and the definition of "sexual conduct"[6] under section

---

4. "Deviate sexual intercourse" is defined as "any act of sexual gratification between a person and an animal or a corpse, involving the sex organs of one and the mouth, anus, or sex organs of the other." HRS § 707–700 (1993).

5. At the time of the Kalani decision, "Sexual penetration" was defined as:
 (1) Vaginal intercourse, anal intercourse, fellatio, deviate sexual intercourse, or any intrusion of any part of a person's body or of any object into the genital or anal opening of another person's body; it occurs upon any penetration, however slight, but emission is not required; or

(2) Cunnilingus or anilingus, whether or not actual penetration has occurred.
HRS § 707–700 (Supp.2004).

6. "Sexual conduct" is defined as:
 acts of masturbation, homosexuality, lesbianism, bestiality, sexual intercourse or physical contact with a person's clothed or unclothed genitals, pubic area, buttocks, or the breast or breasts of a female for the purpose of sexual stimulation, gratification, or perversion.
HRS § 712–1210 (Supp.2002).

712–1210 to determine that "the legislature associated the mouth and tongue with sexual relations." *Id.* at 286–87, 118 P.3d at 1229–30. Thus, the interior of the mouth constituted an "intimate part" for purposes of "sexual contact" as defined in section 707–700. *Id.* at 287, 118 P.3d at 1230.

Similarly, in the present case, the plain language of HRS section 707–700 does not indicate whether the legislature considered the buttocks to be a part of the body typically associated with sexual relations. *Id.* at 284–85, 118 P.3d at 1227–28. However, the legislative history of section 707–700, as well as an in pari materia reading of section 712–1210, supports the conclusion that the legislature intended that the buttocks be included as "intimate parts" as that term is used in the definition of "sexual contact". *See HGEA,* 124 Hawai'i at 202, 239 P.3d at 6, *see also* HRS § 1–15(2), *id.* § 1–16. In *Kalani,* the defendant proposed a definition of sexual contact that was limited to the "touching of the genitals, the pubic area, *the buttocks,* and the female breasts." 108 Hawai'i at 285, 118 P.3d at 1228 (emphasis added). We rejected the defendant's proposed definition, stating that "the history of HRS § 707–700 clearly indicates that the legislature refused to adopt the narrow interpretation of 'sexual contact' advanced by Kalani[.]" *Id.* at 285–86, 118 P.3d at 1228–29. Thus, we do not believe that the legislature intended an even narrower interpretation of "sexual contact" that would exclude the buttocks.

Further, the definition of "sexual conduct" under HRS section 712–1210 includes "physical contact with a person's clothed or unclothed ... *buttocks* ... for the purposes of sexual stimulation, gratification, or perversion." HRS § 712–1210 (Supp.2002) (emphasis added). Thus, an in pari materia reading of section 712–1210 supports the conclusion that the legislature intended the buttocks to be an "intimate part" for purposes of "sexual contact" as that phrase is defined in section 707–700.[7] *See Kalani,* 108 Hawai'i at 286, 118 P.3d at 1229 ("This court has noted that

the definitions of 'sexual contact' under HRS § 707–700 and 'sexual conduct' under HRS § 712–1210 were both 'adopted expressly for use in penal statutes regulating conduct with sexual connotations' and construed the two statutes with reference to one another." (quoting *State v. Rodgers,* 68 Haw. 438, 442, 718 P.2d 275, 277 (1986), superseded by statute on other grounds)).

However, as the ICA in the present case cautioned, a "body part which might be intimate in one context, might not be in another [context]." Mem. Op. at 28 (quoting *People v. Rivera,* 138 Misc.2d 570, 525 N.Y.S.2d 118, 119 (N.Y.Sup.Ct.1988) (brackets in original)). The ICA provided that,

> with respect to the buttocks, it is not uncommon for youth team coaches to give their players a congratulatory pat on the buttocks in recognition of a good play or outstanding effort. Parents hugging or carrying a young child may also place their hands on the child's buttocks. In these situations, adults are knowingly touching the buttocks of another person who is less than fourteen years old. But because of the context, it would be unreasonable to regard the child's buttocks as an "intimate part" for purposes of applying the sexual assault statutes. In these contexts, the child's buttocks would not be a body part "typically associated with sexual relations."

*Id.* (quoting *Kalani,* 108 Hawai'i at 284–85, 118 P.3d at 1227–28) (footnote omitted).

We agree with the ICA that, when viewed in context, there was sufficient evidence in the record "to show that Silver's touching of Minor's buttocks during the late night massages constituted the touching of an 'intimate part' of Minor's body." *Id.* Minor testified that while Silver slept next to him, Silver woke up Minor at least three different times in the night by rubbing and whispering to him. According to Minor, Silver told him to be quiet so as not to wake anyone up. Minor further testified that, during the course of

---

7. Silver argues that because HRS section 712–1210 specifically includes the buttocks in its definition of "sexual conduct", "[t]he absence of that word in HRS Section 707–700 suggests it was purposely omitted." We disagree. As we noted

in *Kalani,* "the history of HRS § 707–700 clearly indicates that the legislature refused to adopt [a] narrow interpretation of 'sexual contact'" such as the one advocated by Silver. *Kalani,* 108 Hawai'i at 285–86, 118 P.3d at 1228–29.

the massages, Silver slowly brushed over his buttocks twice and his penis once.

In this context, Minor's testimony "is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion" that Silver knowingly subjected Minor, who was eleven years old at the time, to sexual contact. *See Matavale*, 115 Hawai'i at 157–58, 166 P.3d at 330–31 (brackets omitted); *see also* HRS § 707–732(1)(b) (Supp.2004). Accordingly, substantial evidence exists in the record to support Silver's conviction of sexual assault in the third degree as charged in Counts 3–5.[8] *Id.*

■ We disagree, however, with the ICA's conclusion that sufficient evidence existed to convict Silver on Count 1. Count 1 alleged that Silver touched Minor's buttocks in the pool. Minor testified that the pool incident occurred "a day or two before" the massage. As to Silver's conduct, Minor testified that Silver and Minor's father threw Minor back and forth between them in the pool. According to Minor, Silver would "hold under my butt to like hoist me up and throw me, but I don't remember like him grabbing me or anything." When asked what part of his body Silver touched, Minor responded, "[k]ind of like my crotch to throw me or under my butt to throw me." Minor's father testified that he saw a lot of physical contact between Minor and Silver in the pool, which he characterized as "horseplay." However, he also testified that he did not see any sexual contact between Silver and Minor, and that he would not have known if Silver had his hands underneath Minor's buttocks.

The ICA concluded that,

[w]ith respect to the pool incident, *if this were the only charged sexual assault and we limited our consideration to the evidence of Silver's conduct in the pool, we would conclude that there was insufficient evidence to support his conviction on that count.* The touching of a child's buttocks

during horseplay in a pool normally would not constitute the touching of an "intimate" body part. However, *viewing the evidence of Silver's conduct in the pool in the context of his subsequent conduct during the late night massages,* and considering all the evidence presented in the light most favorable for the State, we conclude that there was sufficient evidence that Silver's touching of Minor's buttocks in the pool constituted the touching of an "intimate" body part. Considering the evidence in the strongest light for the State, we conclude that *a rational jury could infer a direct connection between Silver's conduct in the pool and his late night massages and that Silver's actions were all part of a deliberate plan and concerted effort by him to subject Minor to sexual contact.*

Mem. Op. at 29 (emphases added). The ICA concedes that the evidence of what occurred in the pool is insufficient to convict Silver of sexual assault in the third degree in Count 1. However, the ICA concludes that sufficient evidence to support Count 1 is provided by conduct that occurred at a later time, in a different setting, and which was the basis for three separate counts of sexual assault because these events provided context for Silver's conduct in the pool. The ICA expands the scope of "context" too far.

As discussed above, sufficient evidence exists that Silver's contact with Minor's buttocks and penis, as alleged in Counts 3–5, constituted touching of Minor's "intimate parts" given the context in which it occurred: the massage occurred late at night; Silver woke up Minor repeatedly by rubbing and whispering to him; Silver told Minor to be quiet so as not to wake anyone; and Silver slowly brushed over Minor's buttocks and penis while giving the massage. That context does not exist with the pool incident, which occurred "a day or two before" the massage, and involved "horseplay" in the pool in which Minor's father participated. The subsequent massage does not turn Sil-

8. Based on Silver's conduct underlying Counts 3–5, as detailed above, we disagree with Silver's contention that HRS section 707–732(b)(1) failed to give notice of the conduct required in order to avoid its penalties. The statute gives a "person of ordinary intelligence a reasonable opportunity to know" that conduct such as Silver's during the nighttime massage is prohibited. *See Kalani*, 108 Hawai'i at 287, 118 P.3d at 1230 (quoting *State v. Richie*, 88 Hawai'i 19, 31, 960 P.2d 1227, 1239 (1998)).

ver's conduct in the pool, which the ICA agrees is otherwise not actionable, Mem. Op. at 29, into a criminal offense. Although evidence of subsequent conduct may, in some circumstances, be probative of a fact of consequence such as the defendant's motive, opportunity, intent or plan, *see* Hawai'i Rules of Evidence Rule 404(b); *State v. Yoshida*, 45 Haw. 50, 53–54, 361 P.2d 1032, 1035 (1961) (holding that evidence of defendant's subsequent conduct was relevant to show motive, intent, and plan), it is not in this case.

Though "horseplay" in a pool could potentially form the basis for a sexual assault charge, the State did not adduce substantial evidence to support Silver's conviction in this case. *Matavale*, 115 Hawai'i at 157–58, 166 P.3d at 330–31. Accordingly, we hold that there was insufficient evidence to support Silver's conviction under Count 1.

 In *State v. Kalaola*, 124 Hawai'i 43, 237 P.3d 1109 (2010), we stated that

[t]he reversal of a conviction for insufficiency of the evidence constitutes a determination by the appellate court that the defendant should have been acquitted in the trial court in the first instance because, "as a matter of law [ ] the jury could not properly have returned a verdict of guilty."

*Id.* at 56, 237 P.3d at 1122 (quoting *State v. Bannister*, 60 Haw. 658, 661, 594 P.2d 133, 135 (1979)). The Fifth Amendment to the United States Constitution states that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb[.]" U.S. Const. amend. V. Similarly, the Hawai'i Constitution provides that no person "shall . . . be subject for the same offense to be twice put in jeopardy[.]" Haw. Const. art. I, § 10. We have held that "[t]he prohibition against double jeopardy applies where the reversal is based on insufficiency of the evidence[.]" *Bannister*, 60 Haw. at 660, 594 P.2d at 135; *see also Burks v. United States*, 437 U.S. 1, 11, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978) ("The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding.").

We, therefore, reverse the judgment of conviction on Count 1 for insufficiency of the evidence, and remand the case to the circuit court with instructions to enter a judgment of acquittal on Count 1 and to modify Silver's sentence accordingly. *Id.* at 661, 594 P.2d at 135. We affirm the circuit court's judgment of conviction and sentence in all other respects.