**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-18-0000807**
**17-DEC-2021**
**07:58 AM**
**Dkt. 70 MO**

NO. CAAP-18-0000807

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellee, v.
ROSS K. MACARIOLA, JR., Defendant-Appellant

APPEAL FROM THE DISTRICT COURT OF THE THIRD CIRCUIT
(SOUTH KOHALA DIVISION)
(CASE NO. 3DCW-18-0001252)

MEMORANDUM OPINION
(By: Ginoza, Chief Judge, Leonard and Hiraoka, JJ.)

Defendant-Appellant Ross K. Macariola (**Macariola**)

appeals from the September 20, 2018 Judgment and Notice of Entry

of Judgment (**Judgment**) entered against him by the District Court

of the Third Circuit, South Kohala Division (**District Court**).[1]

Macariola was convicted of Assault in the Third Degree

under Hawaii Revised Statutes (**HRS**) § 707-712(1)(a)(2014)[2]

(**Assault Third**) and sentenced to ten days of confinement with

---

[1]     The Honorable Mahilani E.K. Hiatt presided.

[2]     HRS § 707-712 provides, in pertinent part:

> **§ 707-712 Assault in the third degree**. (1) A person
> commits the offense of assault in the third degree if the
> person:
> (a)     Intentionally, knowingly, or recklessly causes bodily
>         injury to another person; or
> (b)     Negligently causes bodily injury to another person
>         with a dangerous instrument.

eight days suspended and placed on probation for one year.  On appeal, Macariola requests that this court reverse the conviction.

I.    BACKGROUND

On May 2, 2018, the State of Hawaiʻi (**State**) filed a Complaint against Macariola, alleging that Macariola had "intentionally, knowingly or recklessly caused bodily injury to another person, RAYNARD TORRES [(**Torres**)], thereby committing the offense of Assault in the Third Degree, in violation of Section 707-712(1)(a), [HRS]."

During pretrial proceedings on August 7, 2018, the District Court stated that pretrial motions were due on or before August 23, 2018, and that responses to these motions, witness lists, and exhibit lists were due on September 13, 2018.  As discussed herein, both the State and District Court subsequently misstated the date that witness and exhibit lists were due.  On appeal, the parties concur that the deadline for witness and exhibit lists was September 13, 2018.

On September 13, 2018, Macariola filed a witness list and a Notice of Intent to Offer Character Evidence (**Notice**) under Hawaiʻi Rules of Evidence (**HRE**) Rules 404(a)(2) and 404(b).  Macariola's Notice indicated his intent to introduce evidence about Torres's prior criminal convictions, specifically, "an assault in 2007, a TRO violation in 2013, a harassment case in

2013, and a case of Abuse of a Family/Household Member in 2014; as well as evidence of his Promotion of Dangerous Drugs in 2008."

Macariola's witness list named Harry Yim (**Yim**) as a defense witness, though it did not provide an address or any other contact information and stated that Yim's address was unknown.

The District Court found the Notice was sufficient, but excluded the character evidence as irrelevant.  The District Court also denied Macariola's request to present Yim as a witness, as well as his request to continue the trial to permit the State to interview Yim.  The District Court's decision to preclude Yim's testimony was largely premised on both the State and District Court's mistaken belief that the witness list had not been filed in accordance with trial milestones.

> MS. BAILEY:  Um, the State does not have that witness list in its file, <u>but the deadline was August 23rd, 2018</u>.  And pursuant to Rule 16, there also be -- needs to be a way for, especially if the person's not identified in discovery, a way for the State to -- to contact that individual, and there was no contact information provided.
>
> . . . .
>
> THE COURT:  Uh, my understanding, from review of the minutes[3] and from the procedure, uh, that I've seen the Court follow, is that the pretrial motion deadline is the same as the witness and exhibit list deadline.  The trial -- the -- the third -- the week before trial is the response to any pretrial motions.
>
> <u>So if you filed your witness list on the 13th of September, that's past the deadline of the August 23rd, Mr. Miller</u>.
>
> . . . .

---

[3]     The August 7, 2018 minutes read, in relevant part, "pretrial mot deadline 23-Aug-2018 witness/exhibit lists and response deadline 13-Sep-2018."

THE COURT:  Well the -- the issue that I have is, um, is sufficient notice to the State.  <u>So if the deadline for the witness list was -- it -- which -- which it was, was August 23rd, you don't meet that deadline, um, by filing on September 13th.</u>  Um, and I wouldn't, uh, I mean if -- if you had filed on August 23rd and you had said, "address unknown," um, and then you did find him subsequently, uh, I would be inclined to allow him to testify, uh, because that would have been sufficient notice to the State, um, I think.  <u>But filing a witness September 23rd, or excuse me, on September 13th when it was due August 23rd, I understand we're all busy people but, uh, that's two weeks after the deadline.</u>

. . . .

THE COURT:  So, Mr. Miller, it's not just some rule or just some procedure, uh, you know, for -- for no purpose.  And really the rule is to allow notice to the other side, in this case the State, to prepare.  And by filing something on the 13th and then calling him today, I -- I just don't see that the State had proper notice and an ability to prepare.

So, uh, I am not going to allow his testimony.  Uh, and I understand you're busy, but I'm busy, too, and the State's busy.  We're -- we're all busy.

You were in front of the Court on September 11th, um, and at that time could have had the opportunity to let the Court know what the status was of your investigation and what your calendar looked like, and the Court could have entertained a motion to continue trial at that point.  But and then to come here today for trial and say you're prepared to proceed, and then call somebody that is, uh, not previously disclosed, uh, Court not -- Court's not going to allow him.

(Emphasis added).

The State called three witnesses during its case-in-chief, including Torres.  Torres testified that he was in the area to sell a tattoo gun to Lovelyn Yamamoto (**Yamamoto**).  Torres further testified that Shane Batalona (**Batalona**) accompanied Yamamoto to Torres's vehicle and examined the tattoo gun.  Shortly thereafter, the encounter became violent and Torres was struck by both Batalona and Macariola.

Macariola was the only witness in the defense case-in-chief.  He testified that he had acted in defense of Batalona and

of himself, and that Torres was the initial aggressor.  The District Court found that Macariola struck Torres in the face and that Macariola did not have a reasonable belief to act in self-defense or in defense of another.

II.  <u>POINTS OF ERROR</u>

Macariola asserts three points of error on appeal:  (1) the District Court's refusal to allow the Defense to introduce complainant's prior acts, including a drug conviction and convictions for charges involving violence and aggression, prevented Macariola from presenting a complete defense; (2) the District Court abused its discretion in precluding Macariola from presenting the testimony of a percipient witness to the incident based on an erroneous belief that trial counsel had missed the deadline for filing his witness list; and (3) Macariola's conviction must be reversed because the State failed to adduce substantial evidence that any physical contact Macariola made with the complainant was not in defense of others or in self-defense.

III. <u>APPLICABLE STANDARDS OF REVIEW</u>

"The admissibility of evidence requires different standards of review depending on the particular rule of evidence at issue.  When application of a particular evidentiary rule can yield only one correct result, the proper standard for appellate review is the right/wrong standard.  The traditional abuse of discretion standard should be applied in the case of those rules

of evidence that require a 'judgment call' on the part of the trial court."  State v. Pond, 118 Hawaiʻi 452, 461, 193 P.3d 368, 377 (2008) (citing State v. St. Clair, 101 Hawaiʻi 280, 286, 67 P.3d 779, 785 (2003)) (bracket omitted).

Evidentiary rulings made pursuant to HRE Rule 404 require a "judgment call," and therefore we apply the abuse of discretion standard.  State v. Williams, 147 Hawaiʻi 606, 613, 465 P.3d 1053, 1060 (2020) (citing State v. Richie, 88 Hawaiʻi 19, 37, 960 P.2d 1227, 1245 (1998)).  An abuse of discretion occurs when the trial court "clearly exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party litigant."  Id. (citing Samson v. Nahulu, 136 Hawaiʻi 415, 425, 363 P.3d 263, 273 (2015)).

"A trial court's determination that evidence is 'relevant' within the meaning of HRE Rule 401 [] is reviewed under the right/wrong standard of review."  St. Clair, 101 Hawaiʻi at 286, 67 P.3d at 785.  HRE Rule 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

We review the sufficiency of evidence on appeal as follows:

> [E]vidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction; the same standard applies whether the case was before a judge or jury.  The test on appeal is not

> whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact.

State v. Kalaola, 124 Hawaiʻi 43, 49, 237 P.3d 1109, 1115 (2010) (citation omitted).

"'Substantial evidence' as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.  And as trier of fact, the trial judge is free to make all reasonable and rational inferences under the facts in evidence, including circumstantial evidence." State v. Matavale, 115 Hawaiʻi 149, 157-58, 166 P.3d 322, 330-31 (2007) (citation omitted).

IV.  DISCUSSION

Macariola's main argument on appeal is that his constitutional right to present a complete defense was violated. The protections granted to an accused by article 1, section 14 of the Hawaiʻi Constitution include "a meaningful opportunity to present a complete defense."  State v. Pulse, 83 Hawaiʻi 229, 246, 925 P.2d 797, 814 (1996) (citation omitted).  The right to present a complete defense includes the "constitutional right to present any and all competent evidence to support a defense." State v. David, 149 Hawaiʻi 469, 481, 494 P.3d 1202, 1214 (2021) (citing State v. Abion, 148 Hawaiʻi 445, 448, 478 P.3d 270, 273 (2020)).  The Hawaiʻi Supreme Court held in Abion:

> Where the accused asserts a defense sanctioned by law to justify or to excuse the criminal conduct charged, and there is some credible evidence to support it, the issue is one of

7

fact that <u>must</u> be submitted to the jury, and <u>it is reversible error for the court to reject evidence which, if admitted, would present an essential factual issue for the trier of fact</u>.

<u>Abion</u>, 148 Hawaiʻi at 448, 478 P.3d at 273 (emphasis added) (quotation marks omitted).

In <u>David</u>, the defendant-appellant was convicted of assault in the first degree after he stabbed and killed his cousin at a family gathering. 149 Hawaiʻi at 471, 494 P.3d at 1204. The trial court permitted the introduction of evidence that the victim had been drinking and was aggressive that evening as evidence of the defendant's self-defense. However, the trial court also excluded evidence of the victim's .252 blood alcohol concentration (**BAC**), absent expert testimony. <u>Id.</u> The supreme court vacated the conviction and held that excluding the BAC evidence violated the defendant's constitutional right to present a complete defense, and that expert testimony was not required to present the BAC evidence. <u>Id.</u> at 481, 494 P.3d at 1214. The supreme court reasoned that the defendant's case "hinged on his credibility" and that because his defense "depended on his account of [the victim's] behavior before the fatal altercation and, by extension, on his credibility, we hold that there is a reasonable possibility that excluding the BAC evidence affected the trial's outcome." <u>Id.</u> Thus, the defendant's due process rights were violated because he was not permitted to "present any

and all competent evidence tending to show that he acted in self-defense."  Id. at 482, 494 P.3d at 1215 (citing Abion, 148 Hawaiʻi at 448, 478 P.3d at 273)).

In Williams, the defendant-appellant was convicted of attempted murder in the second degree.  On appeal, he alleged that the trial court erred in precluding admission of several statements in the weeks leading up to the incident that supported the defendant's self-defense claim.  Williams, 147 Hawaiʻi at 607-08, 465 P.3d at 1054-55.  The defendant attempted to introduce evidence that the victim had "boasted" about the following seven acts:  (1) doing time for the crime of murder in California; (2) that he did hard time in California; (3) that he knew how to fight because of the time he spent in jail and that he had to learn to fight to survive; (4) that he knew about gang-bangers and gang-members; (5) that he had experience with violence from spending time in jail; (6) that he "got away" with murder by beating the charge – because someone else took credit for it; and (7) that he did the crime but got off on a technicality.  Id.  The trial court permitted the defendant only to testify that "[victim] knows how to fight.  He learned how to fight in jail."  Id. at 609, 465 P.3d at 1056.  The supreme court held that the trial court's "curtailment of the defendant's testimony as to his state of mind at the time he committed the offense bespeaks a misapprehension of the discretion available to the court."  Id. at 615, 465 P.3d at 1062.  The supreme court

reasoned that the trial court had "prevented [the defendant] from offering his own version of facts relevant to his self-defense claim" and thus "violated his constitutional right to present a complete defense."  Id. at 614, 465 P.3d at 1061.

A defendant's right to present evidence is not, however, limitless and "may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process."  Abion, 148 Hawaiʻi at 454, 478 P.3d at 279 (citing State v. Kassebeer, 118 Hawaiʻi 493, 514, 193 P.3d 409, 430 (2008)).

In Kassebeer, the supreme court held that the trial court's two evidentiary rulings did not violate the defendant-appellant's constitutional right to present a complete defense. Kassebeer, 118 Hawaiʻi at 514, 193 P.3d at 430.  The trial court permitted the prosecution to ask the police officer, who had responded to a report of sexual assault and kidnapping, whether "[w]hat she told you, did - did that jive with the injuries that she had?" but prevented Kassebeer from asking the same police officer, "[i]nsofar as the injuries, do you recall that [the complainant] told you that the injuries that you saw were from a prior incident?"  Id.  In upholding the trial court's ruling, the supreme court reasoned that the defendant had "other potential avenues of laying the required foundation as to the source of the complainant's injuries, and he was not denied the opportunity to

do so."  Id.  Accordingly, his constitutional rights to present evidence and to confront witnesses were not violated.  Id.

A.   The Evidence re Acts Involving Drugs and Violence

Macariola contends that the District Court abused its discretion in precluding cross-examination of Torres regarding his "knowledge of drugs" and character for violence.  Macariola argues that Torres's convictions were relevant character evidence on the issue of Torres's credibility, who was the first aggressor, and to Macariola's state of mind, and thus the exclusion of this evidence violated his constitutional right to present a complete defense.

As to the first issue, Macariola attempted to cross-examine Torres on his "knowledge of drugs" after Torres expressed confusion as to why Macariola confronted him about drugs on the night of the altercation.

> A.   -- yeah.  Um, he had walked in about I'd say halfway through, and to the passenger window, and asked my wife if -- if "that is JR," and then came around the car and then --
>
> Q. Okay, so --
>
> A.   -- tried to confront me about --
>
> . . . .
>
>       THE WITNESS:  -- drugs, and it -- it's, like --
>
> Q.  (BY MR. MILLER)  Why -- what is that so amazing to you?
>
> A.  Because  -- I mean for him to like just walk up and just start asking me if I'm there to sell drugs is -- kinna make -- I'm kind of dumbfounded.  I don't know what to say to that.  Like, its like --
>
> Q.  Well you --
>
> A.   -- I don't know what even gives him that impression or why, you know, to just go and just start --

11

Q.  You don't know --

A.  -- I mean it --

Q.  -- why he had that impression?

A.  Yeah, I don't.

. . . .

Q. . . . Okay.

So -- and my question is, uh, weren't you in the -- in the past, previously, involved in some drugs?

After the State's objection, Macariola rephrased the question and instead asked whether Torres had "knowledge about different kinds of illegal drugs."  After the District Court sustained the State's relevance objection, Macariola's attorney stated, "Your Honor, he's saying he doesn't know why they were bringing up this stuff about drugs, and I wanted to establish, well, he's not a totally innocent person regarding knowledge of drugs, that he knows about drugs.  That's all."  The District Court then again sustained the State's relevance objection.

Because the District Court excluded the line of questioning as irrelevant, we analyze under a right/wrong standard.  We also note that HRE Rule 607 states that, "[t]he credibility of a witness may be attacked by any party, including the party calling the witness."  Torres's testimony that he "had no idea" why Macariola would mention drugs opened the door for defense counsel to challenge that assertion and test Torres's credibility.  Thus, the District Court erred in prohibiting this cross-examination, which tended to impugn Torres's testimony that he had no idea why someone might think he was selling drugs.

Next, we turn to whether the District Court erred when it declined to admit any evidence concerning Torres's past convictions for crimes that would indicate a character of aggressiveness and violence. We recognize that here, as in David, Macariola's defense "hinged on his credibility" and the believability of his testimony about Torres's violent behavior and how it influenced Macariola's conduct. See David, 149 Hawaiʻi at 481, 494 P.3d at 1214 (citing State v. Lealoa, 126 Hawaiʻi 460, 470, 272 P.3d 1227, 1237 (2012) (recognizing that in a self-defense case, the defendant's credibility is "at the crux" of the case because the jury must decide "whether the defendant did in fact subjectively believe the use of force was necessary")).

However, as stated in Abion, a defendant's right to present relevant evidence "is not without limitation and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." Abion, 148 Hawaiʻi at 454, 478 P.3d at 279. Laying the requisite evidentiary foundation is a legitimate interest in the criminal trial process. See Kassebeer, 118 Hawaiʻi at 430, 193 P.3d at 514; see also State v. Maddox, 116 Hawaiʻi 445, 460, 173 P.3d 592, 607 (App. 2007) (requiring that foundation be established before permitting the introduction of character evidence under HRE Rule 404(a)(2)).

Accordingly, our analysis turns on whether Macariola laid sufficient foundation to admit character evidence under HRE Rule 404(a)(2).[4]

A party may introduce "specific instances of conduct [under HRE Rule 405(b)] to prove character when character is an essential element of, *inter alia*, a defense to the crime."  State v. DeLeon, 143 Hawaiʻi 208, 215, 426 P.3d 432, 439 (2018).  When there is a factual dispute as to who was the initial aggressor, "a victim's pertinent character trait is an 'essential element' to a claim of self-defense, and therefore, evidence of specific instances of conduct concerning that character trait, such as the victim's prior violent acts, may be admissible under HRE 405(b)."  Id.  A factual dispute about who was the first aggressor arises when there is some evidence to support such a finding.  Id. at 215-18, 426 P.3d at 439-42.  The trial court has "discretion to determine to what extent, and in what manner, evidence" of a victim's criminal record may be permitted.  State v. Basque, 66 Haw. 510, 515, 666 P.2d 599, 603 (1983).

In DeLeon, the defendant argued that he acted in self-defense when he shot and killed a person in a group that was allegedly threatening him.  In support of his defense, he

---

[4]      HRE Rule 404(a)(2), Character of victim, provides an exception to HRE Rule 404's general prohibition against admitting evidence of a person's character to show that the person acted in conformity with that trait.  HRE Rule 404(a)(2) permits "[e]vidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor."

testified that he got out of his vehicle and heard someone behind him say, "[t]here's that fucking Mexican."  DeLeon, 143 Hawaiʻi at 217, 426 P.3d at 441.  He then turned and saw three to four men, including Powell and Beaudoin, approaching him that he recognized from an altercation earlier that night.  Id. at 217-18, 426 P.3d at 441-42.  DeLeon then pointed his gun at Powell and shot him while his hands were open and raised.  Id. at 218, 426 P.3d at 442.  At the completion of the defense case, DeLeon sought to introduce evidence of Powell's and Beaudoin's prior violent acts to support his position that Powell and Beaudoin had been the first aggressors.  Id. at 212, 426 P.3d at 436.  The trial court excluded the evidence and held that no factual dispute existed because Beaudoin's conduct was remote in time, place, and to the incident, and Powell's conduct was roughly one hour before the confrontation that resulted in Powell's death. Id. at 212, 426 P.2d at 436.  The supreme court, viewing the totality of the circumstances, concluded that a factual dispute as to who was the first aggressor existed, and thus the trial court erred in excluding evidence of two of the witness's prior bad acts.  Id. at 218-19, 426 P.3d at 442-43.  The DeLeon court held that a factual dispute existed because

> (1) DeLeon, by himself, faced Powell and his group, which consisted of three to four people, including Beaudoin; (2) someone from that group said, "[t]here's that fucking Mexican"; (3) Powell, and possibly two others from the group, which may have included Beaudoin, continued to approach after DeLeon fired warning shots into the air and ground and told them several times to stay back; [and] (4) as Powell continued to approach, Powell stated, "[w]hat, you

> think one gun is going to stop us all?" when he was within
> arm's length of DeLeon.

Id. at 218, 426 P.3d at 442.

In Maddox, the trial court granted the State's motion in limine precluding Maddox from cross-examining the complaining witness (**Mota**) on Mota's character for violence, as evidenced by petitions for restraining orders and judgments of conviction for violating two restraining orders in Oregon.  116 Hawaiʻi at 458, 173 P.3d at 605.  After Mota testified, Maddox renewed his request to cross-examine Mota about the bad acts alleged in the restraining order petitions.  Id. at 459, 173 P.3d at 606.  The trial court denied the request and noted that the evidence did not raise a factual issue as to whether Mota had been the first aggressor.  Id.  On appeal, this court held that the trial court had not erred in excluding the character evidence.  Id. at 460, 173 P.3d at 607.  We also noted that the disputed character evidence would have been admissible later in trial, after Maddox had laid the requisite foundation.  Id.

> Once Maddox testified in the defense case, there was ample
> evidence to support a finding that Mota was the first
> aggressor. . . . At that point in the trial, Maddox was
> clearly entitled to question Mota about the past acts of
> violence reflected in the Oregon court documents.  Maddox,
> however, did not attempt or seek permission to question Mota
> about past acts of violence *after* Maddox had introduced
> evidence supporting a finding that Mota was the first
> aggressor.  Thus, the circuit court was never called upon to
> rule on whether such questions were permissible after the
> required evidentiary foundation had been laid.  Under these
> circumstances, we cannot say that the circuit court erred.

Id.

Here, as in Maddox, Macariola attempted to cross-examine Torres about prior acts of violence without laying the

16

requisite foundation.  Viewing the totality of the circumstances at the time of the request, no factual issue had been raised as to who was the first aggressor.  Only Officer Ines and Torres had testified when Macariola requested to cross-examine Torres on his character for aggressiveness and violence.  Neither witness's testimony raised a factual issue as to Torres being the first aggressor.  Rather, Officer Ines's testimony regarding Macariola's voluntary statement indicated that Macariola was the initial aggressor.

> A.  Yes.  When I spoke with him [Macariola], he stated that, um, he was outside, having a few beers.  That --
>
> . . . .
>
> THE WITNESS:  Mr. Macariola was out on Opelo Road having some -- few beers.  He saw a vehicle pull up, um, with a male driver, who was the victim, uh, and -- in this case, and was yelling out the window "who wanted to buy ice?"  Uh, he repeated that again.  Mr. Macariola then said, "You know what, get the F out of here.  We don't -- we don't want that kind of stuff."
>
> . . . .
>
> THE WITNESS:  And, uh, then Mr. Macariola hit him [Torres] in the face with a closed fist.

On cross-examination of Officer Ines, Macariola's questions did not raise the issue of self-defense or defense of others.  There was only one question that may have been trying to get to the defense-of-others defense – with Batalona being the other – and the response was insufficient to establish a factual issue.

> MR. MILLER:  Q.  Did Mr. Macariola tell you how Mr. Batalona was involved?
>
> A.  He -- he says that he was involved also.

> Q.  Okay.
>
>      Did he tell you any more detail about how he was involved?
>
> A.  That I don't remember.  I don't know.

Torres testified during the State's case-in-chief that he had not initiated the altercation with Macariola.  Torres then testified consistently on cross-examination.

> Q.  Um, when you got out of the car to get your stuff back, did you, you know, how were you -- did you -- did you push Mr. Batalona or hit him or shove him in any way?
>
> A.  No.
>
> Q.  No.
>
> A.  He [Batalona] grabbed me.
>
> Q.  And when Mr. Macariola came over, did you try to swing at him?
>
> A.  No.
>
> Q.  You didn't try to swing at him?
>
> A.  No.
>
> Q.  Do you ever remember grabbing, uh, Mr. Batalona by the necklace around his neck?
>
> A.  No.  I don't remember that.

After Torres's testimony, there was no factual question raised as to who was the first aggressor.  Thus, we conclude that the District Court did not err in excluding the character evidence at that time.

During the defense case-in-chief, Macariola testified that he went towards the altercation to protect his uncle, Batalona, then struck Torres in self-defense.  Macariola did not, however, subsequently seek permission to question Torres about his character for violence after the requisite foundation had been laid.  Macariola had ample opportunity to do so during the

18

defense case-in-chief, or during his cross-examination of Torres after the State called Torres as a rebuttal witness.  As in Maddox, the District Court in this case was never called upon to rule on whether such questions were permissible after the required evidentiary foundation had been laid, and we cannot conclude that the District Court erred.

B.    Exclusion of Yim Testimony

Macariola contends that the District Court abused its discretion in precluding testimony of an eye witness to the incident (Yim), based on allegedly late identification of the witness, as well as rejecting Macariola's request for a recess or brief continuance to allow the State to interview the witness.

The parties dispute which Hawaiʻi Rules of Penal Procedure (**HRPP**) discovery rule applied in this case.  Macariola argues that HRPP Rule 16.1 applied because this was a misdemeanor trial, and thus excluding Yim's testimony constituted an abuse of discretion because he did not fail to meet his discovery obligations.  The State argues that the trial court was exercising its discretion under HRPP Rule 16(d) and was "effectively allowing discovery pursuant to HRPP Rule 16."

Generally, HRPP Rule 16 applies to felony cases.  HRPP Rule 16(a).  In misdemeanor cases, "[u]pon a showing of materiality and if the request is reasonable, the court in its discretion may require disclosure as provided for in this Rule 16 in cases other than those in which the defendant is charged with

a felony, but not in cases involving violations." HRPP Rule 16(d). HRPP Rule 16.1 applies to "non-felony criminal and criminal traffic cases." HRPP Rule 16.1(a). Under HRPP Rule 16.1 "a request for discovery shall be made to the opposing side in writing and shall list the specific materials being sought. Unless otherwise ordered, the request shall not be filed with the court." HRPP Rule 16.1(b).

There is no evidence in the record that there was a showing of materiality that caused the District Court to exercise its discretion to apply HRPP Rule 16 to the entire proceedings. The record does, however, reflect that the District Court exercised its discretion to set certain discovery deadlines for the parties.

> MS. BAILEY: And then, Your Honor, may we set some motion deadlines and responses?
>
> THE COURT: How much time do you need beforehand?
>
> MS. BAILEY: I'm looking at maybe August 23rd for motions. And then responses due by the 13th of September a week prior.
>
> THE COURT: Okay. So we'll go with those dates. And pretrial motions will be due on or before August 23rd. And responses to those motions shall be due September 13[th]. And witness lists and exhibit list shall also be due September 13[th].

We presume that the District Court's pretrial order, and subsequent sanctioning for failure to abide by that order, was issued pursuant to HRPP Rule 16. See State v. Inman, 121 Hawaiʻi 195, 198-99, 216 P.3d 121, 124-25 (App. 2009). Accordingly, we conclude that the District Court exercised its discretion to apply HRPP Rule 16 to witness and exhibit lists.

Thus, Macariola arguably was required to disclose to the prosecutor "[t]he names and last known addresses of persons whom the defendant intends to call as witnesses, in the presentation of the evidence in chief, together with their relevant written or recorded statements[.]" HRPP Rule 16(c)(2)(i). On September 13, 2018, Macariola submitted his witness list. The witness list included Yim, but stated that his address was unknown. At the trial on September 20, 2018, Macariola's counsel represented that he did not know where Yim lived until "this past Sunday," which was September 16, 2018.

Sanctions under HRPP Rule 16 are governed by HRPP Rule 16(e)(9), which allows a court to order a party to "permit the discovery, grant a continuance, or it may enter such other order as it deems just under the circumstances." HRPP Rule 16(e)(9)(i).[5] "A trial court's imposition of sanctions pursuant to HRPP Rule 16 for a discovery violation is reviewed for abuse of discretion." Inman, 121 Hawaiʻi at 199, 216 P.3d at 125 (citing State v. Ahlo, 79 Hawaiʻi 385, 398, 903 P.2d 690, 703 (App. 1995)). In Ahlo, this court recognized that

> [W]hile [discovery] sanctions are designed to accomplish the purpose of discovery[,] it is clear that the imposition of sanctions should not encroach on a fair trial. In particular, the <u>exclusion of defense evidence in criminal cases as a means of sanction is a drastic measure for the right of a defendant to adduce evidence in his behalf is one of the fundamentals inherent in the due process guarantee of a fair trial</u>.

---

[5]    HRPP Rule 16(e)(9)(ii) addresses willful violation of discovery rules by counsel; there is no evidence to suggest that section applies to this case.

Ahlo, 79 Hawai'i at 399, 903 P.2d at 704 (emphasis added) (brackets, citation, quotation marks, and ellipses omitted). When determining an appropriate sanction, a trial court must consider:  "(1) whether the defendant was acting maliciously or in bad faith; (2) the extent of the prejudice to the prosecution caused by the violation; (3) whether the prejudice could have been cured by measures less severe than excluding evidence; and (4) any other relevant circumstances."  Inman, 121 Hawai'i at 199, 216 P.3d at 125 (citing Ahlo, 79 Hawai'i at 400, 903 P.2d at 705)).

In Inman, the trial court excluded two defense witnesses as a sanction for the defendant's failure to comply with a discovery order and limited the testimony of a third witness.  Id. at 196, 216 P.3d at 122.  Specifically, the defendant failed to provide a witness's birth date by the established deadline and failed to advise the State of the defendant's whereabouts at the time of the alleged offense, as it related to his alibi defense.  Id. at 198, 216 P.3d at 124. There, we held the trial court abused its discretion in precluding the defense witness testimony "essentially based on failure of the defense to provide the birth date for [the witness]."  Id. at 199, 216 P.3d at 125.

Applying those factors, here, there was no evidence the defendant acted maliciously or in bad faith.  The extent of the prejudice to the prosecution was minimal and could have been

remedied without excluding the defense witness. Macariola's failure to provide contact information for Yim could have been remedied by a brief recess or continuance.

The District Court erred in finding that Macariola's witness list filing was late. On appeal, the parties agree that witness lists were due on September 13, 2018. Under the circumstances, we conclude that the District Court abused its discretion when it disallowed a defense eyewitness based on a mistaken belief about the court-imposed discovery deadlines and rejected Macariola's request for a recess or brief continuance to allow the State to interview the witness.

C.    Sufficiency of the Evidence

"It is well-settled that, even where this court finds trial error, challenges to the sufficiency of the evidence must always be decided on appeal." State v. Davis, 133 Hawaiʻi 102, 116, 324 P.3d 912, 926 (2014) (citing Kalaola, 124 Hawaiʻi at 59, 237 P.3d at 1125). The Double Jeopardy Clause bars retrial of a defendant where the evidence is insufficient to support a conviction. State v. Kaulia, 128 Hawaiʻi 479, 496, 291 P.3d 377, 394 (2013) (citing State v. Silver, 125 Hawaiʻi 1, 9, 249 P.3d 1141, 1149 (2011)).

Here, the testimony presented by the State provided substantial evidence to support the District Court's findings and conclusions as to Macariola's conviction for Assault Third. Thus, a new trial is permissible.

V.    CONCLUSION

For these reasons, the Distict Court's September 20, 2018 Judgment is vacated; this case is remanded for a new trial.

DATED: Honolulu, Hawaiʻi, December 17, 2021.

On the briefs:                        /s/ Lisa M. Ginoza
                                      Chief Judge
Donald L. Wilkerson,
for Defendant-Appellant.              /s/ Katherine G. Leonard
                                      Associate Judge
Leneigha S. Downs,
Deputy Prosecuting Attorney,          /s/ Keith K. Hiraoka
County of Hawaiʻi                     Associate Judge
for Plaintiff-Appellee.